# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

v.

LUIS MARIO BARAJAS-ALVARADO,
    *Defendant-Appellant.*

No. 10-50134

D.C. No.
3:09-cr-01236-H-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Marilyn L. Huff, District Judge, Presiding

Argued and Submitted
July 15, 2011—Pasadena, California

Filed August 24, 2011

Before: Pamela Ann Rymer, Richard C. Tallman, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta

## COUNSEL

James M. Chavez, Esquire, Federal Defenders of San Diego, San Diego, California for defendant-appellant Luis Mario Barajas-Alvarado.

Mark R. Rehe, Assistant U.S. Attorney, San Diego, California for appellee United States of America.

## OPINION

IKUTA, Circuit Judge:

To convict an alien criminal defendant of illegal reentry under 8 U.S.C. § 1326,[1] the government must prove that the alien left the United States under order of exclusion, deportation, or removal, and then illegally reentered. In *United States v. Mendoza-Lopez*, the Supreme Court held that a criminal defendant has a Fifth Amendment right to "*some* meaningful review" of a prior administrative proceeding that resulted in the exclusion, deportation, or removal order used as a predicate to a § 1326 offense. 481 U.S. 828, 837-38 (1987). Here, we conclude that Barajas-Alvarado was entitled to judicial review of the predicate expedited removal orders underlying his § 1326 prosecution but failed to show any prejudice resulting from the alleged procedural flaws in the proceedings that resulted in those orders. We therefore affirm the district court's denial of Barajas-Alvarado's motion to dismiss his indictment and the subsequent conviction and sentence.

I

Luis Mario Barajas-Alvarado was removed to Mexico from the United States through the San Ysidro, California, Port of Entry on December 11, 2002, and July 24, 2003, via expedited removal orders.[2] He returned to the United States, and was apprehended and removed to Mexico on July 27, 28, and 29, 2003, August 3, 2003 and December 9, 2004. Barajas-Alvarado was last returned to Mexico through the San Ysidro, California, Port of Entry on February 11, 2005.

---

[1]Unless otherwise noted, all statutory citations are to Title 8 of the United States Code.

[2]Expedited removal proceedings provide a streamlined process by which U.S. officers can remove aliens who attempt to gain entry to the United States but are not admissible. *See* § 1225(b)(1); *see also infra* pp. 11473-75. We refer to such aliens herein as "non-admitted aliens."

On January 18, 2009, Barajas-Alvarado applied for admission into the United States at the Calexico, California, West Port of Entry, using a fraudulent permanent resident alien card. When the officer determined that Barajas-Alvarado was not the rightful owner of the identity card, Barajas-Alvarado attempted to flee to Mexico but was apprehended and escorted to the secondary inspection office.

After his arrest, Barajas-Alvarado admitted that he had purchased the immigration document from a street vendor in Mexico. He also admitted that he had been previously deported from the United States, he had a prior criminal history,[3] and "he attempted to enter the [United States] to seek employment and reunite with his family in Los Angeles."

On April 1, 2009, a grand jury for the Southern District of California returned a one-count indictment charging Barajas-Alvarado with attempted entry after deportation, in violation of § 1326(a) and (b). On September 16, 2009, Barajas-Alvarado filed a motion to dismiss the indictment for lack of a valid predicate removal order. At a subsequent hearing before the district court, he argued that a prior stipulated removal order was invalid and the two previous expedited removal orders could not be used as predicates to a § 1326 prosecution. According to Barajas-Alvarado, *Mendoza-Lopez* precluded use of the expedited removal orders because the proceedings that resulted in those orders were flawed, he had a constitutional due process right to challenge the validity of those proceedings, and § 1225(b)(1)(D) precluded him from making such a collateral attack.

---

[3]According to the record, Barajas-Alvarado had two prior convictions. On April 23, 1990, he was convicted in Los Angeles County Superior Court for transportation/sale of marijuana, for which he received 60 days in jail and 36 months of probation. On March 9, 2004, Barajas-Alvarado was convicted of being a deported alien found in the United States, in violation of § 1326(a) and (b), for which he received 21 months in prison followed by 24 months of supervised release.

The district court agreed that the prior stipulated removal order was invalid, but held that the December 11, 2002 and July 24, 2003 expedited removal orders could serve as a basis for the § 1326 prosecution because Barajas-Alvarado could not show "any prejudice whatsoever" resulting from the alleged procedural violations during his expedited removal proceedings. Therefore, the district court denied Barajas-Alvarado's motion to dismiss to the extent it relied on the expedited removal orders.

On December 18, 2009, as part of a written plea agreement, Barajas-Alvarado entered a conditional guilty plea to the indictment and reserved his right to appeal the use of the expedited removal orders as predicates to his § 1326 charge.

On appeal, Barajas-Alvarado claims that: (1) the Immigration and Naturalization Act (INA) precludes any meaningful judicial review of an expedited removal order, including review of a collateral challenge to such an order in a § 1326 action; (2) under *Mendoza-Lopez*, 481 U.S. at 837-38, some meaningful review of the order is constitutionally required before the order can be used as a predicate to a criminal proceeding; and therefore (3) because the statute precludes review, expedited removal orders cannot be used as predicates in § 1326 prosecutions. We consider Barajas-Alvarado's premises and conclusions, each of which require a detailed look at a thorny and complex area of immigration law.

II

**[1]** We first consider the nature of expedited removal under § 1225(b) and whether the limited administrative and judicial review available for these orders is sufficient to satisfy constitutional concerns when the orders are used as predicates to a § 1326 prosecution for illegal reentry.

A

The expedited removal statute, § 1225(b), provides that when an alien seeks admission to the United States after arriving at a port of entry and does not have entry documents, misrepresents the alien's identity or citizenship, or presents fraudulent identity or immigration documents, "the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution." § 1225(b)(1)(A)(i).[4] The agency has promulgated regulations governing the procedures for expedited removal. *See* 8 C.F.R. § 1235.3(b)(2)(i). First, "the examining immigration officer shall create a record of the facts of the case and statements made by the alien . . . by means of a sworn statement using Form I-867AB, Record of Sworn Statement in Proceedings under Section 235(b)(1)." *Id.* The alien must sign and initial each page. *Id.* Second, the immigration officer "shall advise the alien of the charges against him or her on Form I-860, Notice and Order of Expedited Removal, and the alien shall be given an opportunity to respond to those charges in the sworn statement." *Id.* The immigration officer then serves the alien with Form I-860, and the alien must sign the back of the form to acknowledge receipt. *Id.* "Interpretative assistance shall be used if necessary to communicate with the alien." *Id.*

---

[4]Section 1225(b)(1) states in relevant part:

> If an immigration officer determines that an alien (other than an alien described in subparagraph (F)[for present purposes, an immigrant from Cuba]) who is arriving in the United States or is described in clause (iii)[certain aliens who have not been present unlawfully in the United States for less than two years], is inadmissible under section 1182(a)(6)(C)[providing generally that aliens who seek to procure admission into the United States by fraud are inadmissible] or 1182(a)(7) [providing generally that aliens lacking a valid entry document are inadmissible] of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution.

§ 1225(b)(1)(A)(i).

**[2]** In order to streamline the removal process, the INA limits administrative and judicial review of expedited removal proceedings. As § 1225(b) states, in the ordinary case the immigration officer "shall order the alien removed from the United States *without further hearing or review*." § 1252(b)(1)(A)(i) (emphasis added). Congress authorized administrative review for expedited removal orders only in two narrow circumstances: (1) if the alien claims under oath that he or she is a lawful permanent resident, was previously admitted as a refugee, or was previously granted asylum, *see* § 1225(b)(1)(C); or (2) if the alien claims a fear of persecution if returned to the alien's home country, and an immigration officer deems this fear to be not credible, *see* § 1225(b)(1)(B)(iii)(III).

**[3]** Congress expressly deprived courts of jurisdiction to hear a direct appeal from an expedited removal order. *See* § 1252(a)(2)(A) (limiting review of expedited removal orders to habeas review under § 1252(e)). Although courts have jurisdiction to hear habeas petitions from aliens subject to an expedited removal order, this jurisdiction is limited to considering whether the petitioner is legally in the country, e.g., because the alien is a lawful permanent resident, admitted as a refugee, or has been granted asylum, and whether the petitioner was expeditiously removed. *See* § 1252(e)(2). However, a court's habeas jurisdiction does not extend to review of the claim that an alien was wrongfully deprived of the administrative review permitted under the statute and applicable regulations. *See id.*; *see also* § 1225(b)(1)(B)(iii)(III) (providing for an IJ's review of an immigration officer's adverse credibility determination against an alien who claims a fear of persecution); *Garcia de Rincon v. Dep't of Homeland Sec.*, 539 F.3d 1133, 1139 (9th Cir. 2008).

**[4]** Congress has also prohibited courts from reviewing a collateral challenge to expedited removal orders used as predicates in § 1326 proceedings. *See* § 1225(b)(1)(D). Section 1225(b)(1)(D) provides that in any criminal prosecution for

illegal entry against an alien, "the court shall not have jurisdiction to hear any claim attacking the validity" of an expedited order of removal. *See id.*[5]

[5] In sum, we agree with the first prong of Barajas-Alvarado's argument: the INA precludes meaningful judicial review of the validity of the proceedings that result in an expedited removal order.

B

[6] Given this conclusion, we must turn to the second prong of Barajas-Alvarado's argument and consider whether under *Mendoza-Lopez*, some meaningful review of an expedited removal order is constitutionally required in order to use it as a predicate to a criminal prosecution.

In *Mendoza-Lopez*, two aliens arrested in Nebraska and subjected to a group deportation hearing were ordered deported to Mexico. 481 U.S. at 830. Less than two months later, both aliens were again found in Nebraska and were charged with illegal reentry in violation of § 1326.[6] *Id.* Both men moved to dismiss their indictments on the ground that the IJ had "inadequately informed them of their right to counsel at the hearing, and accepted their unknowing waivers of the

---

[5]Other sections of the INA provide for review of removal orders, but they do not apply to expedited proceedings. For example, though § 1252(a)(2)(D) gives courts jurisdiction to review "constitutional claims or questions of law raised upon a petition for review," this section does not abrogate or supersede § 1225(b)(1)(D) because it gives jurisdiction solely over "petition[s] for review," and expedited removal orders cannot be appealed by means of a petition for review. § 1252(a)(2)(A); *see Garcia de Rincon*, 539 F.3d at 1138-39.

[6]The version of § 1326 in effect at that time did not include subsection (d) (allowing limited collateral challenges to removal orders), which Congress added in direct response to *Mendoza-Lopez*. *See United States v. Garcia-Martinez*, 228 F.3d 956, 959 n.5 (9th Cir. 2000) (noting that § 1326(d) partially codified *Mendoza-Lopez*).

right to apply for suspension of deportation" and to appeal. *Id.* at 831-32. The district court dismissed the indictments, holding that the aliens could bring this sort of collateral challenge in a criminal prosecution, and that the deportation hearing violated the aliens' due process rights because they had not made knowing and intelligent waivers of their rights to apply for relief or to appeal. *Id.* The Eighth Circuit affirmed, holding that the hearing was fundamentally unfair, and thus the deportation orders were unlawful. *Id.* at 832.

**[7]** Reviewing the case, the Court first determined that the then-current language of § 1326 did not allow for a collateral challenge to a deportation order, *see id.* at 835, and the legislative history indicated that Congress did not intend to permit such a challenge, *id.* Nevertheless, the Supreme Court held that the fact that "Congress did not intend the validity of the deportation order to be contestable in a § 1326 prosecution does not end our inquiry," because "[i]f the statute envisions that a court may impose a criminal penalty for reentry after *any* deportation, regardless of how violative of the rights of the alien the deportation proceeding may have been, the statute does not comport with the constitutional requirement of due process." *Id.* at 837. Accordingly, the Court held that notwithstanding Congress's apparent intent, "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be *some* meaningful review of the administrative proceeding." *Id.* at 837-38; *see also id.* at 841 ("Persons charged with crime are entitled to have the factual and legal determinations upon which convictions are based subjected to the scrutiny of an impartial judicial officer.").

**[8]** Having established that aliens are entitled to "some meaningful review" of their deportation proceedings before the resulting removal orders can be used as predicates to a criminal prosecution, the Court held it could review the aliens' challenge to the proceedings resulting in the predicate removal orders in that case. Because the government had

asked the Court "to assume that [the aliens'] deportation hearing was fundamentally unfair," the Court ruled that the government could not rely on the prior deportation orders as reliable proof of an element of a criminal offense. *Id.* at 839-40. Thus, although the Court provided little direct guidance about the nature of the "some meaningful review" standard to which aliens are constitutionally entitled, *Mendoza-Lopez* makes clear that the alien is entitled to judicial review of a claim that the prior proceeding was "fundamentally unfair" and thus cannot be used as a predicate for a criminal case, where the prior proceeding was not previously subjected to judicial review. *Id.*

**[9]** Although *Mendoza-Lopez* addressed a situation in which the aliens had a statutory right to judicial review of a deportation order, but were effectively deprived of that right due to procedural errors in the deportation hearing, the principle established by *Mendoza-Lopez* is equally applicable in the expedited removal order context. By its terms, the principle that aliens must have "some meaningful review" of the proceedings resulting in their removal orders if such orders are to "play a critical role in the subsequent imposition of a criminal sanction," *id.* at 837-38, applies whether it was a procedural error or a statutory mandate that deprived the alien of judicial review of the predicate removal order.[7] Moreover, *Mendoza-Lopez* protects a defendant's right *in a criminal*

---

[7] We likewise have described the right recognized by *Mendoza-Lopez* in a general manner that would apply equally to aliens seeking to challenge an expedited removal order in a subsequent § 1326 prosecution. *See, e.g.*, *United States v. Arias-Ordonez*, 597 F.3d 972, 976 (9th Cir. 2010) (noting that *Mendoza-Lopez* held that "as a matter of due process, a defendant must be permitted to bring a collateral challenge to a prior deportation that underlies a criminal charge, where the prior deportation proceeding effectively eliminated the right of the alien to obtain judicial review"); *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1047 (9th Cir. 2004) (noting that a criminal defendant in a § 1326 criminal prosecution has a "Fifth Amendment right to collaterally attack his removal order because the removal order serves as a predicate element of his conviction").

*prosecution* to challenge a predicate removal order, and nothing in *Mendoza-Lopez* suggests that a criminal defendant should lose such protection merely because the defendant was a non-admitted alien at the time the predicate removal order was issued.[8] Therefore, the rationale for applying the *Mendoza-Lopez* requirement is applicable to a defendant in a criminal prosecution regardless of whether the defendant was a non-admitted alien or an alien in the United States when the removal order was issued.

Arguing against this conclusion, the government contends that non-admitted aliens who received expedited removal orders are differently situated than the aliens in *Mendoza-Lopez*, who had been present in the United States when the predicate removal orders were issued. According to the government, because non-admitted aliens are not entitled to any procedural protections at all, any procedural errors in the issuance of expedited removal orders have no legal import, and therefore expedited removal orders are not subject to review in a subsequent criminal proceeding. We have indeed held that non-admitted aliens are not entitled to any procedure vis-à-vis their admission or exclusion. *See Barrera-Echavarria v. Rison*, 44 F.3d 1441, 1448-49 (9th Cir. 1995) (noting that "[a]n excludable alien . . . has no procedural due process rights regarding his admission or exclusion"), *superseded by*

---

[8]The government does not argue that a criminal defendant who is a non-admitted alien is entitled to less than full due process protections in a § 1326 prosecution, and therefore we do not address this issue. We have previously assumed that even non-admitted aliens are entitled to the normal range of protections in a criminal trial. *See United States v. Gracidas-Ulibarry*, 231 F.3d 1188, 1191 n.3, 1196-97 (9th Cir. 2000) (en banc) (holding that a district court committed constitutional error in failing to instruct the jury on an element of the crime in the trial of a non-admitted alien for a § 1326 violation); *see also Kwai Fun Wong v. United States*, 373 F.3d 952, 971-73 (9th Cir. 2004) (noting that "[s]everal courts have held . . . that non-admitted aliens in the criminal justice system may not be punished prior to an adjudication of guilt in conformance with due process of law, a Fifth and Sixth Amendment safeguard available to citizens and aliens alike").

*statute*, 8 U.S.C. § 1231(a)(6); *accord Alvarez-Garcia v. Ashcroft*, 378 F.3d 1094, 1097-98 (9th Cir. 2004). Nevertheless, the Supreme Court has ruled that when Congress enacts a procedure, aliens are entitled to it. *See United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned."); *Pazcoguin v. Radcliffe*, 292 F.3d 1209, 1218 (9th Cir. 2002) (noting that an alien in exclusion proceedings has no procedural due process rights regarding his admission or exclusion except for the procedures authorized by Congress and holding that "[t]he statute provides the only process [the alien] is due, and he received that process"); *see also United States v. Calderon-Medina*, 591 F.2d 529, 531 (9th Cir. 1979) (stating that it is "not necessary to invoke constitutional grounds" to find a deportation unlawful, because when courts invalidate "adjudicatory actions by federal agencies which violated their own regulations promulgated to give a party a procedural safeguard, . . . the basis for such reversals is not . . . the Due Process Clause, but rather a rule of administrative law." (alterations in original) (internal quotation marks omitted) (quoting *Mendez v. INS*, 563 F.2d 956 (9th Cir. 1977))). Accordingly, though Congress could have created an expedited removal scheme based entirely on the Attorney General's discretion, *see Shaughnessy*, 338 U.S. at 543-44; *see also Johnson v. Eisentrager*, 339 U.S. 763, 770-71 (1950) (distinguishing the rights of aliens within the United States to those outside the territorial jurisdiction of the United States), here it created procedures for identifying and removing aliens expeditiously, *see, e.g.*, § 1225(b); 8 C.F.R. §§ 1235.3(b), 1235.4, thereby laying the groundwork for limited procedural rights for arriving aliens. *See Jean v. Nelson*, 472 U.S. 846, 857 (1985) (holding that non-admitted Haitian refugees could challenge the failure of immigration officials to comply with INS regulations, but declining to consider whether the Fifth Amendment was implicated).

**[10]** Given the language and reasoning in *Mendoza-Lopez*, we conclude that its holding applies equally to alien criminal

defendants seeking to challenge expedited removal orders used as predicates in § 1326 prosecutions. Therefore, we also generally agree with the second prong of Barajas-Alvarado's argument: specifically, an alien previously removed pursuant to an expedited removal order must receive some judicial review of the proceeding resulting in that order if the alien challenges the expedited removal order as "fundamentally unfair," and the order is to "play a critical role in the subsequent imposition of a criminal sanction." 481 U.S. at 837-39. Under our case law, "a predicate removal order satisfies the condition of being 'fundamentally unfair' for purposes of § 1326(d)(3) when the deportation proceeding violated the alien's due process rights and the alien suffered prejudice as a result." *Arias-Ordonez*, 597 F.3d at 976.

C

In light of our interpretation of *Mendoza-Lopez*, we now turn to the final issue raised by Barajas-Alvarado's argument: whether the government is precluded from relying on expedited removal orders as predicates in § 1326 actions, as Barajas-Alvarado contends, or alternatively whether § 1225(b)(1)(D) is unconstitutional to the extent it precludes a collateral challenge to an expedited removal order in a criminal prosecution.

Before we address this issue, we must first consider the government's arguments that we need not resolve this question at all. First, according to the government, *Mendoza-Lopez*'s requirement that aliens have an opportunity for meaningful review can be satisfied in the habeas proceeding authorized by § 1252(e)(2). We disagree, because the limited habeas review available under § 1252(e)(2) does not permit aliens to challenge the validity of the expedited removal order. Rather, as explained above, it allows an alien to claim only that the removal order was issued in error because the alien is legally entitled to be present in the United States, or that a removal order was never issued. *See, e.g.*, *Khan v.*

*Holder*, 608 F.3d 325, 329-30 (7th Cir. 2010) (finding no jurisdiction to review the validity of an expedited removal order under § 1252(e)(2)); *Brumme v. INS*, 275 F.3d 443, 446-48 (5th Cir. 2001) (holding that the court lacked jurisdiction to determine whether an expeditiously removed alien was, in fact, admissible or entitled to relief from removal). The habeas right accorded by § 1252(e)(2) does not allow the alien to claim that the proceeding resulting in the expedited removal order was fundamentally unfair due to some procedural flaw and resulting prejudice.

Second, the government contends that we can avoid conflict with *Mendoza-Lopez* by interpreting § 1225(b)(1)(D) to permit limited review of expedited removal orders. But this approach is contrary to the plain language of § 1225(b)(1)(D), which expressly strips courts of jurisdiction "to hear any claim attacking the validity of an [expedited removal order]" in any action "brought against an alien under . . . section 1326." § 1225(b)(1)(D). Although we must avoid making a constitutional ruling if we can do so by any *fair* reading of a statute, *INS v. St. Cyr*, 533 U.S. 289, 299-300 (2001) (quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932)), here there is no fair reading of the statutory language that allows collateral review of expedited removal orders, *cf. United States v. Locke*, 471 U.S. 84, 96 (1985) ("We cannot press statutory construction to the point of disingenuous evasion even to avoid a constitutional question." (quoting *George Moore Ice Cream Co. v. Rose*, 289 U.S. 373, 379 (1933)) (internal quotation marks omitted)); *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 732 (9th Cir. 2007) ("Where the statutory language is clear and consistent with the statutory scheme at issue, the plain language of the statute is conclusive and the judicial inquiry is at an end."). Where a statute tells us that we cannot hear "any claim," even limited review of a claim that the alien was prejudiced by flaws in the expedited removal order violates this command, and we must decline to do so.[9]

---

[9]The government's reliance on the Fifth Circuit's decision in *United States v. Lopez-Vasquez*, 227 F.3d 476, 486 (5th Cir. 2000), to support its

**[11]** Because we cannot comply with *Mendoza-Lopez*'s direction in the ways suggested by the government, we turn to Barajas-Alvarado's argument that we must hold that expedited removal orders can never be used as predicates in § 1326 prosecutions.[10] We reject this approach, because we cannot ignore Congress's clear intent to impose substantial penalties on aliens who return to the United States without permission following removal, regardless of whether the removal was accomplished through an expedited procedure or through more formal proceedings. The sanctions imposed under § 1326 apply to aliens who, among other things, have been denied admission, excluded, or otherwise "departed the United States while an order of exclusion, deportation, or removal is outstanding," § 1326(a)(1), and makes no exception for those arriving aliens who were denied admission or excluded and ordered removed via expedited proceedings.

---

proposed approach is misplaced. In *Lopez-Vasquez*, the court held that § 1225(b)(1)(D) did not "preclude the district court or [the appeals] court from determining that the requisites of a *Mendoza-Lopez* claim as asserted by [the petitioner] are *not* met," and then concluded that the alien could not succeed in his collateral challenge to his expedited removal order because "he did not suffer any prejudice" as a result of the alleged due process violations in the prior proceeding. *Id.* at 485-86. In light of the plain language of § 1225(b)(1)(D), *Lopez-Vasquez* is best read as implicitly holding that § 1225(b)(1)(D) is unconstitutional to the extent the statute forbids even this limited review. If *Lopez-Vasquez* is interpreted as holding that § 1225(b)(1)(D) itself allows such judicial review, we disagree.

[10]Though Barajas-Alvarado purports to raise general challenges to the expedited removal system in an effort to persuade us that they should not be permitted as predicates to § 1326 offenses, § 1252(e)(3) limits jurisdiction over general challenges to expedited removal proceedings to "action[s] instituted in the United States District Court for the District of Columbia." § 1252(e)(3) (limiting the D.C. District's determinations to whether § 1225 or any regulation issued to implement it is constitutional, or whether regulations, written policy directives, written policy guidelines, or written procedures issued by or under the authority of the Attorney General, are in violation of law). Therefore, we cannot address Barajas-Alvarado's general attacks on the expedited removal process.

**[12]** Moreover, § 1225(b)(1)(D) expressly refers to the use of expedited removal orders in § 1326 prosecutions. § 1225(b)(1)(D) (precluding judicial review of claims attacking the validity of expedited removal orders "[i]n any action brought against an alien under . . . section 1326 of this title"). This statutory language would be superfluous if we excluded expedited removal orders from § 1326 prosecutions. In this respect, we are bound by the "fundamental canon of statutory construction that a statute should not be construed so as to render any of its provisions mere surplusage." *United States v. Wenner*, 351 F.3d 969, 975 (9th Cir. 2003); *see also Ratzlaf v. United States*, 510 U.S. 135, 140-41 (1994); *Bowsher v. Merck & Co.*, 460 U.S. 824, 833 (1983) (restating "the settled principle of statutory construction that we must give effect, if possible, to every word of the statute").

**[13]** Because we cannot flout the intent of Congress to make § 1326 applicable to aliens who were removed from the United States via an expedited order of removal, and because we cannot ignore the language in § 1225(b)(1)(D) clearly contemplating that such orders would be used as predicates in § 1326 prosecutions, we likewise cannot avoid reaching the constitutional issue raised by *Mendoza-Lopez*. Accordingly, we must conclude that § 1225(b)(1)(D) is unconstitutional to the extent it prohibits "*some* meaningful review" in a § 1326 criminal prosecution of a claim that the proceeding that resulted in the expedited removal order was fundamentally unfair in that "the deportation proceeding violated the alien's due process rights and the alien suffered prejudice as a result." *Arias-Ordonez*, 597 F.3d at 976.[11] In taking this approach to resolve the conflict between constitutional due process requirements and § 1225(b)(1)(D), we follow exactly

---

[11]This approach is similar to the Fifth Circuit's inquiry in *Lopez-Vasquez*, in which the court held that the alien could not succeed in his collateral challenge to his expedited removal order because "he did not suffer any prejudice" as a result of the alleged due process violations in the prior proceeding. 227 F.3d at 485-86.

the approach taken by the Supreme Court in *Mendoza-Lopez*, where it required review of the proceedings that resulted in a removal order even though the Supreme Court concluded that Congress did not intend courts "to sanction challenges to deportation orders in proceedings under § 1326." 481 U.S. at 837.

### III

Guided by this analysis, we turn now to Barajas-Alvarado's claims. Based on the record, Barajas-Alvarado had no opportunity for judicial review of the proceedings that resulted in the expedited removal orders that the government used as predicates for the § 1326 prosecution. Because Barajas-Alvarado never claimed that he was a lawful permanent resident, a refugee, or an asylum recipient, he was not entitled to administrative review of his expedited removal orders under § 1225(b). Nor did Barajas-Alvarado file a habeas petition or attempt to contest the prior expedited removal orders on any of the grounds enumerated in § 1252(e)(2). Finally, § 1225(b)(1)(D) does not permit Barajas-Alvarado to make a collateral challenge to his expedited removal order in the § 1326 criminal proceeding.

**[14]** Because per *Mendoza-Lopez*, Barajas-Alvarado is entitled to "*some* meaningful review" of the proceedings resulting in the expedited removal orders if they are to be used as an element in a § 1326 prosecution and he claims they are fundamentally unfair, we now consider his claim that these proceedings were fundamentally unfair, meaning that the procedural errors he identifies deprived him of due process, and he suffered prejudice as a result.

**[15]** Barajas-Alvarado alleges three procedural errors: that his right to counsel was violated; that the immigration officer failed to translate the proceedings into Spanish, as required by 8 C.F.R. § 1235.3(b)(2)(i); and that the immigration officer

did not obtain his signature on the back of the Form I-860 and did not advise Barajas-Alvarado of the charges against him.

**[16]** Barajas-Alvarado's claim that he was denied his right to counsel, is meritless on its face. Barajas-Alvarado himself identifies no legal basis for his claim that non-admitted aliens who have not entered the United States have a right to representation, and we are aware of no applicable statute or regulation indicating that such aliens have any such right. The cases cited by Barajas-Alvarado involve aliens in the more formal removal proceedings, where the regulations provide a right of counsel, as compared to expedited removal proceedings, where they do not. *Cf.* 8 C.F.R. § 287.3 (stating that "*[e]xcept in the case of an alien subject to . . . expedited removal . . .* , an alien arrested without warrant and placed in formal proceedings . . . will be advised of the reasons for his or her arrest and the right to be represented at no expense to the Government" (emphasis added)). Because non-admitted aliens are entitled only to whatever process Congress provides, *see Shaughnessy*, 338 U.S. at 544, Barajas-Alvarado's lack of representation in the removal proceeding did not constitute a procedural error at all, let alone a due process violation.

We cannot so easily dispose of Barajas-Alvarado's claim that the proceedings were not translated into Spanish, however.[12] Though the applicable procedures require that the immigra-

---

[12]Barajas-Alvarado also claims that he did not sign the back of the Form I-860, and therefore was not informed of the charges against him as required by 8 C.F.R. § 1235.3(b)(2)(i). Because the record is silent as to whether Barajas-Alvarado signed the back of the Form I-860 or was otherwise informed of the charges against him, Barajas-Alvarado did not carry his burden of proof on this claim and cannot establish the existence of a due process violation or prejudice. *See United States v. Leon-Leon*, 35 F.3d 1428, 1431 (9th Cir. 1994). In any event, even if we assume that Barajas-Alvarado suffered a due process violation because he did not sign the back of the Form I-860, he has identified no prejudice resulting from this violation.

tion official provide the alien with "[i]nterpretative assistance," § 1235.3(b)(2)(i), and we have held that "[d]ue process requires that an applicant be given competent translation services," *He v. Ashcroft*, 328 F.3d 593, 598 (9th Cir. 2003); *see also Perez-Lastor v. INS*, 208 F.3d 773, 778 (9th Cir. 2000), the record is ambiguous as to whether Barajas-Alvarado received the required assistance. Some portions of the relevant documentation indicate that the proceeding was translated, while other portions indicate it was not.[13]

[17] Even assuming that the equivocal evidence in the record establishes that Barajas-Alvarado suffered a due process violation because his removal proceedings were not translated, we must still consider whether such error resulted in prejudice. *See United States v. Ramos*, 623 F.3d 672, 683-84 (9th Cir. 2010). An alien seeking to prove prejudice need not establish that he definitely would have received immigration relief, but only that he had "plausible grounds" for receiving such relief. *United States v. Arce-Hernandez*, 163 F.3d 559, 563 (9th Cir. 1998). Where the relevant form of relief is discretionary, the alien must "make a 'plausible' showing that the facts presented would cause the Attorney General to exercise discretion in his favor." *Id.*; *United States v. Corrales-Beltran*, 192 F.3d 1311, 1316 (9th Cir. 1999). We note, however, that establishing "plausibility" requires more than establishing a mere "possibility." In *Arce-Hernandez*, for example, this court held that the alien did not show prejudice because the facts on which he would have relied to show "extreme hardship," as required for § 212(h) relief, were insuffi-

---

[13]Specifically, the first pages of the transcripts of Barajas-Alvarado's 2002 and 2003 sworn statements during his expedited proceedings indicate that the interviews were performed in Spanish. Barajas-Alvarado signed his name on the third page of both statements, indicating that he had read, or had read to him, the sworn statements. However, the 2003 statement has a checked box indicating that the statement was not read back to Barajas-Alvarado in Spanish, while the 2002 statement has checked boxes indicating that the statement was and was not read back to Barajas-Alvarado in Spanish.

cient to meet that standard. 163 F.3d at 564. Similarly, in *Corrales-Beltran*, we held that an alien had failed to make the required "plausible showing that the Attorney General would have exercised discretion in his favor" based on "the unique circumstances of his own case," because all the alien offered was a general statistic that "discretionary relief applications are granted fifty percent of the time." 192 F.3d at 1318. Based on this fact alone, we said, "it would be sheer speculation to conclude" that the alien's "appeal would have been success-ful." *Id.* In other words, to show "plausible grounds" for relief, an alien must show that, in light of the factors relevant to the form of relief being sought, and based on the "unique circumstances of [the alien's] own case," it was plausible (not merely conceivable) that the IJ would have exercised his dis-cretion in the alien's favor. *Id.*

**[18]** Barajas-Alvarado argues that but for the procedural errors, he would have asked to withdraw his application for admission, and it is plausible that the immigration officer would have granted him such relief. We disagree. As explained below, even assuming that Barajas-Alvarado could establish that he would have requested withdrawal relief but for the alleged translation error, he fails to show plausibility that he would have received this relief.

Although an arriving alien may ask to withdraw an applica-tion for admission, the grant of such relief is discretionary. *See* 8 C.F.R. § 1235.4. Prior to IIRIRA, both IJs and immigra-tion officers had the authority to permit an alien to withdraw an application for admission under certain circumstances, an exercise of discretion recognized in the case law, *see In re Gutierrez*, 19 I. & N. Dec. 562 (B.I.A. 1988), but not codified. In *Gutierrez*, the BIA instructed IJs on how this discretion should be exercised, and indicated (among other things) that an alien's attempted fraudulent entry would ordinarily make the alien ineligible for withdrawal relief. *See id.* at 565 ("[E]ven if we were to disregard the applicant's attempted fraudulent entry, we can discern no facts or circumstances rel-

evant to the issue of his admissibility which suggest that justice demands that he be allowed to withdraw his application for admission."). When Congress enacted IIRIRA, it codified this form of discretionary relief in § 1225(a)(4).[14] The agency subsequently developed regulations authorizing immigration officers to permit arriving aliens to withdraw their applications for admission "in lieu of removal proceedings" or expedited removal. *See* 8 C.F.R. § 1235.4.[15]

[19] While the statute and regulation set forth scant guidance for the immigration officer to determine whether to grant withdrawal relief, the agency has prepared an internal document, an Inspector's Field Manual, to guide the immigration inspector's exercise of discretion.[16] The Field Manual sets forth six factors that the immigration officer should consider in evaluating an alien's request for permission to withdraw, namely: (1) the seriousness of the immigration violation; (2) previous findings of inadmissibility against the alien; (3) intent on the part of the alien to violate the law; (4) ability to easily overcome the ground of inadmissibility; (5) age or poor health of the alien; and (6) other humanitarian or public interest considerations. Like *Gutierrez*, it concludes that "[a]n expedited removal order should ordinarily be issued, rather

---

[14]Section 1225(a)(4) provides that "[a]n alien applying for admission may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart immediately from the United States."

[15]Section 1235.4 provides that the Attorney General may exercise his or her discretion to permit "any alien applicant for admission to withdraw his or her application for admission in lieu of removal proceedings . . . or expedited removal." The regulation notes that "[p]ermission to withdraw an application for admission should not normally be granted unless the alien intends and is able to depart the United States immediately."

[16]Although the Field Manual does not have the force of law, *see Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000), and thus is not entitled to *Chevron*-style deference, it guides the immigration officers' discretion and therefore gives us insight regarding whether it is plausible that an immigration officer would have granted Barajas-Alvarado's request for withdrawal.

than permitting withdrawal, in situations where there is obvious, deliberate fraud on the part of the applicant." INS Inspector's Field Manual § 17.2(a) (2001), *available at* Westlaw FIM-INSFMAN 17.2.

The government argues that in determining whether Barajas-Alvarado established that a grant of his requested withdrawal is plausible, we should be guided by *Matter of Gutierrez*, while Barajas-Alvarado argues that *Gutierrez* is not relevant to his case, because it provided guidance to IJs rather than to immigration officers, and because it predates the applicable statute and regulations. Instead, he contends that we should be guided by the Field Manual. We need not resolve this issue, because Barajas-Alvarado's argument that he has a plausible claim of relief fails under the standard set forth in the Field Manual.

**[20]** When we consider the factors listed in the Field Manual, it is clear they all weigh against Barajas-Alvarado's request for withdrawal. Barajas-Alvarado conceded that he had deliberately presented false documents to inspection officers in an effort to gain admission to the United States. He does not dispute that he has been subject to two expedited removal orders. Thus his immigration violation was serious, and there were multiple findings of inadmissibility against him. Barajas-Alvarado cannot easily overcome such grounds of inadmissibility. His deliberate use of false documents establishes his intent to violate the law. Moreover, he was neither a youth nor elderly (rather he was 35 at the time of his most recent expedited removal) and does not allege that he was in poor health; there were no humanitarian or public interest considerations weighing in his favor. Given the weight of these factors against any request for withdrawal, and given the Field Manual's direction that the immigration officer should ordinarily issue an expedited removal order rather than permitting withdrawal in situations where there is obvious, deliberate fraud, it is implausible that Barajas-

Alvarado would have been allowed to withdraw had he requested such relief.

Despite these factors weighing against him, Barajas-Alvarado argues that it is still plausible he would have been permitted to withdraw his application for admission for three reasons: (1) as a matter of statistics, it is plausible that he would have received permission to withdraw; (2) his prior crimes were not serious, and (3) his "ties to the United States were tremendous." None of these factors supports his plausibility claim. His argument based on statistics is foreclosed by *Corrales-Beltran*, which (as explained above) held that a general statistic that "discretionary relief applications are granted fifty percent of the time" was insufficient to show plausibility of relief. 192 F.3d at 1318. Although Barajas-Alvarado argues that arriving aliens who have used fraudulent documents are generally granted withdrawal, the record does not support this claim.[17] His second and third factors (seriousness of the crimes for which he was removed, and his ties to the United States) are not listed as considerations in the Inspector's Field Manual and therefore carry little weight, particularly in light of the Field Manual's emphasis on the disqualifying effect of "obvious, deliberate fraud on the part of the applicant." INS Inspector's Field Manual § 17.2(a).

**[21]** Because Barajas-Alvarado cannot make a plausible showing that the facts presented would have caused the immigration officer to exercise discretion in his favor, *Arce-*

---

[17]Barajas-Alvarado cites *Valadez-Munoz v. Holder*, 623 F.3d 1304, 1306-07 (9th Cir. 2010), and *Munyua v. United States*, 2005 WL 43960, at *1-2 (N.D. Cal. Jan. 5, 2005), two cases in which an alien who presented false documents and was granted withdrawal, as evidence that it is plausible that he would also have been granted relief. Because these cases involve aliens in very different factual circumstances, and the courts in those cases neither addressed nor explained why the alien was granted withdrawal relief, they do not help Barajas-Alvarado carry his burden of showing it was plausible he would have been granted relief in his unique circumstances.

*Hernandez*, 163 F.3d at 563; *Corrales-Beltran*, 192 F.3d at 1318, he has failed to establish prejudice. Because there was no prejudice, Barajas-Alvarado has failed to show that his predicate removal orders were invalid; accordingly, the district court did not err in ruling that they could be used as predicates for the § 1326 prosecution.

IV

In sum, we conclude there must be "some meaningful review" of the proceeding that resulted in an expedited removal order if it is used as a predicate for criminal prosecution of an alien under § 1326. Our review, however, is limited to a determination whether the removal proceeding that resulted in the expedited removal order was fundamentally unfair because it violated the alien's due process rights and resulted in prejudice. Applying this standard to the facts of this case, and even assuming that but for the alleged procedural violations in his hearing Barajas-Alvarado would have requested the right to withdraw his application for admission, Barajas-Alvarado failed to establish that it was plausible such relief would be granted, and therefore failed to establish any prejudice resulting from the alleged procedural violations. As such, his expedited removal orders could be used as predicates for the § 1326 prosecution. We therefore affirm the district court's denial of his motion to dismiss the indictment and the subsequent judgment and sentence.

**AFFIRMED**.