FILED

MAR 28 2012

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JOSE MERAZ-OLIVERA,

Defendant - Appellant.

No. 10-50533

D.C. No. 3:09-cr-03837-JAH-1

MEMORANDUM*

Appeal from the United States District Court
for the Southern District of California
John A. Houston, District Judge, Presiding

Argued and Submitted February 6, 2012
Pasadena, California

Before: REINHARDT, WARDLAW, and CALLAHAN, Circuit Judges.

Jose Meraz-Olivera appeals his jury conviction on a one count indictment

for violating 8 U.S.C. § 1326, and the district court's denial of his motion to

dismiss the indictment. We have jurisdiction under 28 U.S.C. § 1291, and we

affirm.

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

1. The district court did not err in denying Meraz-Olivera's motion to dismiss the indictment as improperly predicated on the August 2000 expedited removal order. We have jurisdiction to resolve his collateral challenge to that order because "there must be *some* meaningful review" of that administrative action where, as here, it plays "a critical role in the subsequent imposition of a criminal sanction." *United States v. Mendoza-Lopez*, 481 U.S. 828, 837 (1987). Meraz-Olivera "can succeed in this collateral challenge only if he is able to demonstrate that: (1) his due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *United States v. Garcia-Martinez*, 228 F.3d 956, 960 (9th Cir. 2000) (quotation omitted). Neither element is satisfied here.

Meraz-Olivera was not denied due process by the immigration officer's failure to inform him that he had the right to withdraw the application for admission "in the discretion of the Attorney General." 8 U.S.C. § 1225(a)(4). "[T]he Supreme Court has ruled that when Congress enacts a procedure, aliens are entitled to it." *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1084 (9th Cir. 2011). Here, Meraz-Olivera received all of the process required under 8 U.S.C. § 1225(b)(1)(A)(I). Neither the statute, nor the regulations, require that an immigration officer advise the alien of his opportunity to request withdrawal of his

application for admission, subject to the Attorney General's discretion. *See id.*; 8 C.F.R. § 235.3 (procedures for expedited removal).

Meraz-Olivera suffered no prejudice because he had no plausible grounds for relief. *See Barajas-Alvarado*, 655 F.3d at 1089 ("Where the relevant form of relief is discretionary, the alien must make a plausible showing that the facts presented would cause the Attorney General to exercise discretion in his favor.") (quotation omitted). Meraz-Olivera falsely claimed that he was a United States citizen to the primary immigration officer. During a secondary inspection, he admitted that he had lied and that he knew that his actions were illegal. An alien who attempts to enter the United States by fraudulent means is ineligible for withdrawal under 8 U.S.C. § 1225(a)(4). *See In re Guttierez*, 19 I. & N. Dec. 562, 565 (BIA 1988); INS Inspector's Field Manual § 17.2(A) (2001) ("An expedited removal order should ordinarily be issued, rather than permitting withdrawal, in situations where there is obvious, deliberate fraud on the part of the applicant."). An alien does not have the right to withdraw his application for admission, 8 C.F.R. § 235.4; here the immigration officer exercised his discretion to proceed with expedited removal.

2.      Nor did the district court err by giving the Ninth Circuit model jury instruction on reasonable doubt. *See United States v. Velasquez*, 980 F.2d 1275,

3

1278 (9th Cir. 1992) (reviewing reasonable doubt instruction *de novo*). We reject Meraz-Olivera's arguments that the model instruction: (1) improperly forecloses speculation as a basis for having a reasonable doubt; (2) fails to direct jurors that proof beyond a reasonable doubt cannot be based on speculation; and (3) misstates the presumption of innocence because it instructs that reasonable doubt "may arise," from the evidence. The model instruction correctly states the law, and does not "detract from the heavy burden suggested by the term 'reasonable doubt' standing alone." *Id.*

**AFFIRMED.**

*United States v. Meraz-Olivera*, No. 10-50533

REINHARDT, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that the district court did not err in instructing the jury on reasonable doubt. I disagree, however, with the majority's resolution of Meraz's due process claim. The Due Process Clause required that Meraz be notified of the opportunity to ask to withdraw his application for admission, and Meraz was prejudiced by the deprivation of that right. His conviction should be reversed.

The majority subverts the essential requirement of constitutional due process in denying Meraz's claim because he "received all of the process required under 8 U.S.C. § 1225(b)(1)(A)(I)." Memorandum at 2. It is true that "'when Congress enacts a procedure, aliens are entitled to it.'" *Id.* (quoting *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1084 (9th Cir. 2011)). It is not true, however, that an alien's due process rights in the context of a criminal prosecution are *limited* to those prescribed by statute or regulation. The Constitution requires that individuals receive process that is "'meaningful' and 'appropriate to the nature of the case'" before they are deprived of any protected interest, independent of whether or not such process is mandated by statutes or regulations. *Bell v. Burson*, 402 U.S. 535, 541-42 (1971) (citation omitted). If compliance with statutory or regulatory procedures were itself sufficient to satisfy

the constitutional command, then the Due Process Clause would be deprived of all substance.[1]

Had the majority properly conducted the due process analysis that it chose to bypass, it would have concluded that Meraz was entitled to be informed that he had the right to ask to withdraw his application for admission. We have held that aliens have a due process right to be apprised of all forms of relief for which they might reasonably be eligible. *See United States v. Melendez-Castro*, No. 10-50620, 2012 WL 130348, at *2 (9th Cir. Jan. 18, 2012); *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000). Moreover, all three factors of the due process standard of *Mathews v. Eldridge*, 424 U.S. 319 (1976), weigh in Meraz's favor: an alien's interest in being allowed to withdraw his application is immense, the failure to inform an alien of the right to seek withdrawal poses an unacceptably high risk that the alien will be denied a benefit that he would receive if he were to ask for it, and the administrative burden of requiring such disclosure is minimal. *See id.* at 335.

---

[1] Although "non-admitted aliens are not entitled to any procedure vis-à-vis their admission or exclusion," *Barajas-Alvarado*, 655 F.3d at 1084; *see United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950), such aliens *are* entitled to due process review of their immigration proceedings when those proceedings form the basis of a subsequent criminal prosecution. *United States v. Mendoza-Lopez*, 481 U.S. 828, 837-38 (1987); *see Barajas-Alvarado*, 655 F.3d at 1085 (applying *Mendoza-Lopez* to expedited removal proceedings). To hold in the context of a criminal prosecution that the Due Process Clause requires nothing more than compliance with statutory or regulatory procedures is wholly inconsistent with *Mendoza-Lopez*.

I also disagree with the majority's conclusion that Meraz was not prejudiced by the failure to inform him of his right to seek withdrawal of his application. "An alien seeking to prove prejudice need not establish that he definitely would have received immigration relief, but only that he had 'plausible grounds' for receiving such relief." *Barajas-Alvarado*, 655 F.3d at 1089. In light of the agency's criteria for allowing the withdrawal of an application for admission, and in light of the fact that withdrawal is offered to an overwhelming proportion of aliens who would otherwise be removed on an expedited basis, Meraz might well have been permitted to withdraw his application had he asked to do so. *See* Insp. Field Manual 17.2(a), *available at* FIM-INSFMAN 17.2 on Westlaw; U.S. Dep't of Homeland Security, Office of Immigration Statistics, *Immigration Enforcement Actions: 2004 Annual Report* 6 (2005) ("Approximately 184,000 foreign national[s] were determined to be inadmissible in 2004 for reasons that made them subject to expedited removal. However, 129,000 of those aliens were allowed to withdraw their application for admission."). Meraz presented no false documents to immigration officers, he had never previously been removed, and he has three U.S. citizen children. Although an alien who has committed "obvious, deliberate fraud" (such as the use of "counterfeit or fraudulent documents") may not *ordinarily* be allowed to withdraw his application for admission, *id.* (emphasis added), this guidance hardly implies that withdrawal is to be denied in *all* such cases. Meraz,

-3-

moreover, did not use "counterfeit or fraudulent documents" at all; he merely stated that he was a citizen of the United States before admitting at secondary inspection that he was not. The majority's rationale comes close to saying that *no* alien who is subject to expedited removal can show that he might plausibly have been allowed to withdraw his application, since *any* such alien must have tried to enter the country without legal authorization. Such a holding is plainly inconsistent with the agency's own statistical report that a large majority of aliens in Meraz's position are granted the relief of which he was not even informed.

I therefore respectfully dissent.