REINHARDT, Circuit Judge,
concurring in part and dissenting in part:
I agree with the majority that the district court did not err in instructing the jury on reasonable doubt. I disagree, however, with the majority’s resolution of Meraz’s due process claim. The Due Process Clause required that Meraz be notified of the opportunity to ask to withdraw his application for admission, and Meraz was prejudiced by the deprivation of that right. His conviction should be reversed.
The majority subverts the essential requirement of constitutional due process in denying Meraz’s claim because he “received all of the process required under 8 U.S.C. § 1225(b)(1)(A)©.” Memorandum at 612. It is true that “ ‘when Congress enacts a procedure, aliens are entitled to it.’ ” Id. (quoting United States v. Barajas-Alvarado, 655 F.3d 1077, 1084 (9th Cir.2011)). It is not true, however, that an alien’s due process rights in the context of a criminal prosecution are limited to those prescribed by statute or regulation. The Constitution requires that individuals receive process that is “‘meaningful’ and ‘appropriate to the nature of the case’ ” before they are deprived of any protected interest, independent of whether or not such process is mandated by statutes or regulations. Bell v. Burson, 402 U.S. 535, 541-42, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) *613 (citation omitted). If compliance with statutory or regulatory procedures were itself sufficient to satisfy the constitutional command, then the Due Process Clause would be deprived of all substance.[1]
Had the majority properly conducted the due process analysis that it chose to bypass, it would have concluded that Meraz was entitled to be informed that he had the right to ask to withdraw his application for admission. We have held that aliens have a due process right to be apprised of all forms of relief for which they might reasonably be eligible. See United States v. Melendez-Castro, 671 F.3d 950, 953-54 (9th Cir.2012); United States v. Arrieta, 224 F.3d 1076, 1079 (9th Cir.2000). Moreover, all three factors of the due process standard of Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), weigh in Meraz’s favor: an alien’s interest in being allowed to withdraw his application is immense, the failure to inform an alien of the right to seek withdrawal poses an unacceptably high risk that the alien will be denied a benefit that he would receive if he were to ask for it, and the administrative burden of requiring such disclosure is minimal. See id. at 335, 96 S.Ct. 893.
I also disagree with the majority’s conclusion that Meraz was not prejudiced by the failure to inform him of his right to seek withdrawal of his application. “An alien seeking to prove prejudice need not establish that he definitely would have received immigration relief, but only that he had ‘plausible grounds’ for receiving such relief.” Barajas-Alvarado, 655 F.3d at 1089. In light of the agency’s criteria for allowing the withdrawal of an application for admission, and in light of the fact that withdrawal is offered to an overwhelming proportion of aliens who would otherwise be removed on an expedited basis, Meraz might well have been permitted to withdraw his application had he asked to do so. See Insp. Field Manual 17.2(a), available at FIM-INSFMAN 17.2 on Westlaw; U.S. Dep’t of Homeland Security, Office of Immigration Statistics, Immigration Enforcement Actions: 200k Annual Report 6 (2005) (“Approximately 184,000 foreign nationals] were determined to be inadmissible in 2004 for reasons that made them subject to expedited removal. However, 129,000 of those aliens were allowed to withdraw their application for admission.”). Meraz presented no false documents to immigration officers, he had never previously been removed, and he has three U.S. citizen children. Although an alien who has committed “obvious, deliberate fraud” (such as the use of “counterfeit or fraudulent documents”) may not “ordinarily ” be allowed to withdraw his application for admission, id. (emphasis added), this guidance hardly implies that withdrawal is to be denied in all such cases. Meraz, moreover, did not use “counterfeit or fraudulent documents” at all; he merely stated that he was a citizen of the United States before admitting at secondary inspection that he was not. The majority’s rationale comes close to saying that no alien who is *614 subject to expedited removal can show that he might plausibly have been allowed to withdraw his application, since any such alien must have tried to enter the country without legal authorization. Such a holding is plainly inconsistent with the agency’s own statistical report that a large majority of aliens in Meraz’s position are granted the relief of which he was not even informed.
I therefore respectfully dissent.

. Although "non-admitted aliens are not entitled to any procedure vis-á-vis their admission or exclusion,” Barajas-Alvarado, 655 F.3d at 1084; see United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 544, 70 S.Ct. 309, 94 L.Ed. 317 (1950), such aliens are entitled to due process review of their immigration proceedings when those proceedings form the basis of a subsequent criminal prosecution. United States v. Mendoza-Lopez, 481 U.S. 828, 837-38, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987); see Barajas-Alvarado, 655 F.3d at 1085 (applying Mendoza-Lopez to expedited removal proceedings). To hold in the context of a criminal prosecution that the Due Process Clause requires nothing more than compliance with statutory or regulatory procedures is wholly inconsistent with Mendoza-Lopez.