**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, <br><br> v. <br><br> GUSTAVO GARCIA-GONZALEZ, *Defendant-Appellant*. | No. 13-50369 <br><br> D.C . No. 3:12-cr-04471-BTM-1 <br><br> OPINION |

Appeal from the United States District Court
for the Southern District of California
Barry T. Moskowitz, District Judge, Presiding

Submitted
March 3, 2015[*]—Pasadena, California

Filed July 1, 2015

Before: Michael R. Murphy,[**] Ronald M. Gould,
and Richard C. Tallman, Circuit Judges.

Opinion by Judge Murphy

---

[*] The panel unanimously finds this case suitable for decision without oral argument. Fed. R. App. P. 34(a)(2).

[**] The Honorable Michael R. Murphy, Senior Circuit Judge for the U.S. Court of Appeals, Tenth Circuit, sitting by designation.

## SUMMARY[***]

### Criminal Law

The panel affirmed a conviction for being a previously removed alien illegally found in the United States in violation of 8 U.S.C. § 1326(a).

The panel held that the district court correctly denied the defendant's motion to dismiss the indictment, where even assuming the existence of a due process violation in the underlying expedited removal proceeding, the defendant failed to demonstrate that relief in the form of withdrawal of application for admission was plausible and thus failed to carry his burden of demonstrating prejudice.

The panel held that the district court did not err in denying the defendant's motion to compel the government to produce statistics about the numbers of individuals with a background similar to his who were granted withdrawal of application of admission, where the statistics the defendant sought are not presently available and cannot be accurately compiled even with the expenditure of significant resources.

---

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Kara Hartzler, Federal Public Defender of San Diego, Inc., San Diego, California, for Defendant-Appellant.

Laura E. Duffy, United States Attorney; Bruce R. Castetter, Assistant United States Attorney, Chief, Appellate Section, Criminal Division; and Anne Kristina Perry, Assistant United States Attorney, San Diego, California, for Plaintiff-Appellee.

## OPINION

MURPHY, Circuit Judge:

## I. INTRODUCTION

A grand jury indicted Gustavo Garcia-Gonzalez[1] on one count of being a previously removed alien illegally found in the United States, in violation of 8 U.S.C. § 1326(a). Garcia moved the district court to dismiss the indictment, arguing the prior removal upon which it was based was fundamentally unfair. *See id.* § 1326(d). The district court denied the motion; Garcia entered a conditional guilty plea preserving his right to challenge that decision on appeal. *See* Fed. R. Crim. P. 11(a)(2). Garcia asserts the district court erred in two particulars: (1) in concluding he failed to demonstrate his

---

[1] In their district court filings and briefs on appeal, the parties refer to Garcia-Gonzalez as Garcia. This opinion uses the same nomenclature.

expedited removal in 2012[2] was fundamentally unfair; and (2) in refusing to order the government to produce statistics about the numbers of individuals with a background similar to his who were granted a form of discretionary relief available in expedited removal proceedings, *i.e.*, withdrawal of application for admission. *See* 8 U.S.C. § 1225(a)(4) ("An alien applying for admission may, in the discretion of the Attorney General . . . , be permitted to withdraw the application for admission and depart immediately from the United States."); 8 C.F.R. § 1235.4 (providing Attorney General with discretion to allow an "alien applicant for admission to withdraw his or her application for admission in lieu of . . . expedited removal").

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court affirms the district court's judgment of conviction. Garcia failed to demonstrate his 2012 expedited removal was fundamentally unfair. Furthermore, the statistics Garcia sought are not presently available and can not be accurately compiled even with the expenditure of significant resources.

## II.  BACKGROUND

### A.  General Legal Background

It is a crime for an alien who has been removed from the United States to "enter[], attempt[] to enter, or . . . at any time

---

[2] Garcia was removed from the United States in 2003 and 2012. The district court found reason to doubt the fundamental fairness of the 2003 removal, but declined to resolve the issue because it concluded the 2012 expedited removal was valid. On appeal, the government disclaims any reliance on the 2003 removal as a basis to support Garcia's § 1326 conviction. Thus, the only issue before the court is the validity of the 2012 expedited removal.

[be] found in" the United States without the express consent of the Attorney General.  8 U.S.C. § 1326(a).  A prior removal "must be valid, legal, and comport with due process requirements to sustain a conviction under Section 1326." *United States v. Lopez*, 762 F.3d 852, 858 (9th Cir. 2014).  Section 1326 sets out three requirements a defendant must satisfy to challenge the validity of a prior removal order. 8 U.S.C. § 1326(d).  The only requirement at issue in this case is the requirement that a defendant demonstrate the entry of a prior removal order was "fundamentally unfair."  *Id.* § 1326(d)(3).

"[A] predicate removal order satisfies the condition of being fundamentally unfair for purposes of § 1326(d)(3) when the deportation proceeding violated the alien's due process rights and the alien suffered prejudice as a result." *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1085 (9th Cir. 2011) (quotations omitted).  Garcia's predicate removal was an expedited removal at the border.  The Constitution does not entitle "non-admitted aliens" to "any procedure vis-à-vis their admission or exclusion."  *Id.* at 1084.  "Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned."  *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950).  Thus, the regularity of Garcia's expedited removal proceeding is judged solely by the procedures set out in 8 U.S.C. § 1225(b) and 8 C.F.R. § 1235.3(b).

To demonstrate prejudice from a due process violation, Garcia must show that, absent the violation, it was plausible he would have obtained discretionary relief from removal. *United States v. Raya-Vaca*, 771 F.3d 1195, 1206 (9th Cir. 2014).  The only form of discretionary relief available in expedited removal proceedings is withdrawal of application

for admission.    8 C.F.R. § 1235.4.    In analyzing the plausibility of that form of discretionary relief, this court looks "for guidance to the Inspector's Field Manual, an internal agency document that counsels immigration officers as to when to grant withdrawal of application for admission." *Raya-Vaca*, 771 F.3d at 1206–07.[3]

## B.  Factual Background

Garcia was born in Mexico.  In 1989, at the age of eight, he was brought to the United States by his parents.  He sporadically attended school in the United States, but never graduated from high school.  Garcia has two children with Margarita Flores: Isabel Garcia and Anne Garcia.  Anne Garcia has Down Syndrome.  He has three children with his current partner Elva Rodriguez.  The ages of his children do not appear in the record.

---

[3] As this court has noted,

> [t]he Inspector's Field Manual provides for a highly individualized determination and instructs officers to consider all facts and circumstances related to the case to determine whether permitting withdrawal would be in the best interest of justice.  The Manual also enumerates six factors relevant to the question of relief: (1) the seriousness of the immigration violation; (2) previous findings of inadmissibility against the alien; (3) intent on the part of the alien to violate the law; (4) ability to easily overcome the ground of inadmissibility; (5) age or poor health of the alien; and (6) other humanitarian or public interest considerations.

*United States v. Raya-Vaca*, 771 F.3d 1195, 1207 (9th Cir. 2014) (quotations and citations omitted).

Sometime prior to 2002, Garcia's father, then a permanent legal resident of the United States, filed an I-130 petition to adjust Garcia's status.  In 2006, after Garcia's father had become a United States citizen, the I-130 was approved. Garcia's priority date was reached in June 2007.[4]

In 2002, Garcia was convicted of, *inter alia*, possession of cocaine, in violation of Cal. Health & Safety Code § 11350(a).  Since 2006, Garcia has had several additional criminal convictions.  Although all these convictions were misdemeanors, they include serious offenses (*i.e.*, driving under the influence of alcohol/drugs, possession of narcotics paraphernalia, and using or being under the influence of a controlled substance).

In 2003, Garcia was removed from the United States following proceedings before an Immigration Judge.  *See supra* n.2 (noting the government has conceded this removal proceeding was not fundamentally fair).  On September 11, 2012, Garcia attempted to enter the United States through the San Ysidro Port of Entry.  He presented a Washington state birth certificate that belonged to someone else.  That same day, he was ordered removed from the United States via expedited removal.  *See* 8 U.S.C. § 1225(b).  The validity of Garcia's instant § 1326 conviction turns on whether he has carried his burden of demonstrating this expedited removal was fundamentally unfair.

---

[4] The reaching of Garcia's priority date did not grant him a visa; it merely allowed him to file a visa application.  The ultimate success of his visa application was contingent on him demonstrating admissibility.  *See generally Scialabba v. Cuellar de Osorio*, 134 S. Ct. 2191, 2198 (2014).

## C. Procedural Background

Nine days after his expedited removal, officers found Garcia in the United States near the Calexico Port of Entry. A grand jury indicted Garcia on one count of illegal reentry. Garcia filed a motion to dismiss, asserting his 2012 expedited removal failed to comply with statutory and regulatory requirements in three ways: (1) the examining officer failed to comply with 8 C.F.R. § 1235.3(b)(2)(i) by not presenting for his review and signature Forms I-860 and I-867AB; (2) he was never informed withdrawal of application for admission was available in lieu of expedited removal; and (3) the examining officer mistakenly thought his 2003 removal was based on an aggravated felony. Garcia asserted these alleged due process violations prejudiced him because, absent the violations, he stood a good chance of being permitted to withdraw his application for admission. According to Garcia: (1) his attempt to enter the United States using false documents is not a serious immigration violation; (2) the pending visa request by his father, which achieved a priority date by the time of his expedited removal, overcame any ground of inadmissibility; (3) humanitarian factors— including his father's advanced age and his care for his daughter with Down Syndrome—further supported the plausibility of a grant of discretionary relief; and (4) as of 2004, almost 70% of aliens determined to be inadmissible were allowed to withdraw their applications for admission and that another individual who attempted to enter with false citizenship documents, to which he was similarly situated, had been allowed to withdraw his application. The district court denied Garcia's motion to dismiss in a comprehensive written order.

## III.  ANALYSIS

### A.  Validity of 2012 Expedited Removal

#### 1.  Standard of Review

This court reviews de novo a "denial of a motion to dismiss an indictment under 8 U.S.C. § 1326 when the motion is based on an alleged deprivation of due process in the underlying removal proceedings.  The district court's factual findings are reviewed for clear error." *United States v. Valdavinos-Torres*, 704 F.3d 679, 685 (9th Cir. 2012) (citations and quotation omitted).

#### 2.  Discussion

##### a.  Due Process Violation

The government does not contest the assertion that Garcia's 2012 expedited removal proceeding failed to comply with the applicable regulation.  *See* 8 C.F.R. § 1235.3(b)(2)(i).  Thus, like the district court, we assume Garcia has established a due process violation and move on to consider the question of prejudice.

##### b.  Prejudice

Garcia failed to demonstrate that, absent the assumed due process violation, it was plausible he would have been granted withdrawal of his application for admission in lieu of his 2012 expedited removal.  This case is factually and legally indistinguishable from *Barajas-Alvarado*, 655 F.3d at 1079.  As was the case in *Barajas-Alvarado*, Garcia attempted to enter the United States with false documents of

citizenship. *Barajas-Alvarado* concluded such conduct had a "disqualifying effect" given the Field Manual's focus on "obvious, deliberate fraud on the part of the applicant." 655 F.3d at 1091 (quoting Inspector's Field Manual § 17.2). Thus, the first and third factors from the Field Manual weigh strongly against discretionary relief. *Id.* at 1090–91; *see also Raya-Vaca* 771 F.3d at 1210 (collecting cases for proposition that deliberate fraud during an attempted entry "renders relief implausible").

The remaining factors also weigh against granting relief. Without regard to whether it would support a § 1326 conviction, Garcia's removal in 2003 means the second factor from the Field Manual weighs against the availability of discretionary relief. *Barajas-Alvarado*, 655 F.3d at 1090 (noting prior findings of inadmissibility weigh against granting withdrawal of application for admission). The fourth factor—ability to overcome grounds for inadmissability—also weighs against the grant of discretionary relief. Garcia's California state conviction for possession of cocaine rendered him inadmissible and rendered his father's petition for adjustment of status irrelevant. Garcia, quite correctly, does not contest this conclusion. *See* 8 U.S.C. § 1182(a)(2)(A)(i)(II) (providing that a conviction for violating any state or federal law or regulation "relating to a controlled substance" renders an alien inadmissible); *id.* § 1255(a)(2) (providing that an alien must be admissible at the time he seeks adjustment of status). The record also reveals Garcia has continued to engage in criminal conduct, including drug-related conduct, while residing illegally in the United States. There is no indication in the record Garcia is old or in poor health and the district court found that Garcia's alleged provision of care to his disabled daughter was not borne out by the record. Thus, the

fifth and sixth factors from the Field Manual also weigh against discretionary relief. *Barajas-Alvarado*, 655 F.3d at 1090–91.

None of the factors set out in the Field Manual support the grant of discretionary relief. Garcia nevertheless argues he is entitled to relief because he has identified one similarly situated individual, "Gonzalez," who was allowed to withdraw his application for admission. This assertion, too, is foreclosed by *Barajas-Alvarado*, 655 F.3d at 1079. The relevant immigration documents provide no information at all as to why Gonzalez was allowed to withdraw his application for admission. *Barajas-Alvarado* makes clear such comparisons offer no help to an alien attempting to demonstrate discretionary relief is plausible. 655 F.3d at 1091 n.17. The mere fact that a few other aliens in a position arguably similar to Garcia's position were allowed (for reasons unknown) to withdraw their applications for admission establishes nothing more than relief in that situation is possible. "[E]stablishing plausibility[, however,] requires more than establishing a mere possibility." *Id.* at 1089 (quotations omitted).

### c.  Conclusion

Even assuming the existence of a due process violation, Garcia has failed to carry his burden of demonstrating prejudice flowing from such violation. In particular, he has failed to demonstrate that absent such violation, relief in the form of withdrawal of application of admission was plausible. Thus, the district court correctly denied Garcia's motion to dismiss.

## B. Motion to Compel

### 1. Standard of Review

This court reviews de novo challenges to a conviction based on *Brady v. Maryland*, 373 U.S. 83 (1963). *United States v. Smith*, 282 F.3d 758, 770 (9th Cir. 2002). This court also conducts de novo review of a district court's interpretation of the Federal Rules of Criminal Procedure. *United States v. Fort*, 472 F.3d 1106, 1109 (9th Cir. 2007).

### 2. Discussion

Garcia served upon the United States a subpoena ordering it to produce "[a]ny statistics as to whether persons committing fraud are or are not receiving withdrawal of application for admission."[5] When the government did not comply with the subpoena, Garcia moved to compel. At the hearing on the motion to compel, the government contended no such statistics exist. In support of this assertion, the government presented the testimony of Johnny Armijo, the Assistant Director for Border Security at the San Diego Field Office. Armijo testified as follows:

> Q. And to the best of your knowledge, is there a database existing that could be accessed telling us how many people have been allowed to withdraw their applications for admission who had first come in with fraudulent documents?

---

[5] The parties' Joint Motion to Supplement the Record on Appeal with the subpoena is **GRANTED**.

A.  No, we don't have that capability.

Q.  What would it require you to do?

A.   We would have to manually search every case, and review the fact patterns surrounding each one of those cases to determine that answer.

Q.   So, to the best of your knowledge, there are no actual statistics as to the number of people in the Southern District of California in a given time frame who came in, had false docs, and then were allowed to withdraw their application?

A.  No, we don't record that.

Based on this testimony, the district court found (1) the *Brady*/discovery material Garcia sought from the government did not exist; and (2) the government could not produce accurate statistics of the type sought by Garcia even through the expenditure of significant resources.

THE COURT:  Well, but the problem is you want them to do research to try to generate *Brady* material that doesn't exist.

The *Brady* material doesn't exist.  If there were statistics that could help your case, you would be entitled to it.

But what you want them to do is to devise a program, a research method, to try to figure out how to get these statistics.

[Armijo] testified the statistics don't exist. I find him to be credible. You've offered nothing to the contrary.

So I think they—you have asked for any statistics as to whether persons committing fraud are or are not receiving withdrawal of application for admission.

[Armijo] testified that the statistics don't exist, presently exist.

I don't believe under *Brady* that they are obligated to do a statistical research to see if they can come up with something that would help your case, especially in the light of that you can't offer more than one random situation [Gonzalez] where they allowed the fellow to withdraw.

I mean, there is nothing more that runs against the field manual. There is no pattern shown. There is just one spurious example. That's all we have.

And I'm not going to require the government to drop whatever they're doing and spend time and effort to do research to see if somehow they can figure out something that may somewhere be relevant in this case.

The statistics don't exist. They can't quickly get them. They would have to look at every case. And plus the other problem here is you don't know the grounds.

As Mr. Armijo said, they may have just put that he has no basis for entry. Even if there was fraud, they may have not specified fraud, so you don't know.

We're not going to really get really good statistics because there is no specific control over the situation. So we are just going—we're not getting anywhere with this.

So I think that's it. Unless you have something else to offer, I'm going to find that the government has not failed to comply with the subpoena because what is called for under the subpoena doesn't presently exist.

Despite these specific findings on the part of the district court,[6] Garcia asserts the district court erred when it concluded that the government's failure to turn over the requested statistics did not violate *Brady* and Federal Rules of Criminal Procedure 16 and 17. *But see Sanchez v. United States*, 50 F.3d 1448, 1453 (9th Cir. 1995) ("The government has no obligation to produce information which it does not

---

[6] This court has not resolved how much deference must be afforded a district court's factual findings in the context of a *Brady* challenge. *United States v. Price*, 566 F.3d 900, 907 n.6 (9th Cir. 2009). Given that Garcia failed to adduce any evidence as to the existence of the statistics he seeks, it is unnecessary to resolve this issue. *See id.*

possess or of which it is unaware."); Fed. R. Crim. P.
16(a)(1)(E) (obligating government to allow defendant to
inspect a certain subset of items "within the government's
possession, custody, or control"). He asserts he satisfied his
"initial burden of producing some evidence to support an
inference that the government possessed or knew about
material favorable to the defense and failed to disclose it."
*United States v. Price*, 566 F.3d 900, 910 (9th Cir. 2009).
The burden, he therefore asserts, shifted to the government to
prove no such material existed. *See id.* He further asserts the
government failed to satisfy this burden because it produced
the testimony of Armijo, rather than someone more familiar
with the capacities of the information technology databases
at the Department of Homeland Security.

Garcia's arguments are not persuasive. Garcia never
presented any evidence in the district court. The only
testimony presented at the hearing on the motion to compel
was that of Armijo, the government's witness. At that
hearing, Garcia never challenged Armijo's qualifications to
testify. Garcia now asserts his cross-examination of Armijo
developed evidence sufficient to meet his initial burden to
create an inference the statistics exist, but that Armijo's
remaining testimony was insufficient to satisfy the
government's burden of proving they do not exist. Garcia
cannot have it both ways. Either Armijo was not a proper
witness to testify as to the existence of the requested
statistics, which means no evidence was presented at the
hearing to satisfy his initial burden, or he was a proper
witness, which means his categorical denial of the existence
of such statistics satisfies the government's burden.

In any event, it is simply not reasonable to assert that any
component of Armijo's testimony supports in any way the

existence of statistics (reliable or not) as to the number of persons attempting to enter the country with false documents that have been granted discretionary relief. Instead, as set out above, Armijo categorically denied the existence of any such relevant statistics and specifically testified that producing accurate statistics of the type sought by Garcia was not possible, even with the expenditure of significant resources. That was so because the information Garcia sought was not routinely recorded on the relevant immigration forms. The district court found Armijo's testimony to be credible, and there is absolutely nothing in the record that would cast doubt on that credibility determination.

Because Garcia has not produced any evidence indicating the statistics he seeks exist, or can be accurately and easily created, his arguments based on *Brady* and Federal Rules of Criminal Procedure 16 and 17 fail.

## IV. CONCLUSION

For those reasons set out above, the judgment of conviction entered by the district court in this case is hereby affirmed.