**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

AUG 22 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 14-50393 |
| Plaintiff-Appellee, | D.C. No. 3:12-cr-03370-LAB-1 |
| v. | |
| RUFINO PERALTA-SANCHEZ, | MEMORANDUM[*] |
| Defendant-Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 14-50394 |
| Plaintiff-Appellee, | D.C. No. 3:14-cr-01308-LAB-1 |
| v. | |
| RUFINO PERALTA-SANCHEZ, | |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted May 4, 2016
Pasadena, California

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before: PREGERSON, BYBEE, and N.R. SMITH, Circuit Judges.

Rufino Peralta-Sanchez was convicted of illegal entry in violation of 8 U.S.C. § 1325 and illegal reentry in violation of 8 U.S.C. § 1326. The predicate for his illegal reentry count was his 8 U.S.C. § 1225 expedited removal in 2012. Peralta-Sanchez argues that his expedited removal proceedings ("the proceedings") were fundamentally unfair, and thus cannot serve as the basis of the illegal reentry count, because he was neither allowed to hire counsel nor advised of his right to apply for withdrawal of his application for admission. We have jurisdiction under 18 U.S.C. § 1291, and we affirm. Because the revocation of his supervised release condition was premised on the § 1326 conviction, we affirm the district court's revocation of this condition as well.

To succeed in this appeal of the § 1326 criminal conviction, Peralta-Sanchez must demonstrate that the 2012 removal order was "fundamentally unfair." 8 U.S.C. § 1326(d). To do this, he must show that the proceedings violated his due process rights and that he suffered prejudice as a result of that violation. *United States v. Raya-Vaca*, 771 F.3d 1195, 1202 (9th Cir. 2014). We will assume for purposes of this case only that Peralta-Sanchez had a due process right to retain counsel at his own expense and to be advised by the government of the right to seek withdrawal of admission under 8 U.S.C. § 1225(a)(4) during the proceedings,

2

and thus that his due process rights were violated, leaving the question whether Peralta-Sanchez proved that he was prejudiced by these violations.

"An alien seeking to prove prejudice need not establish that he definitely would have received immigration relief, but only that he had 'plausible grounds' for receiving such relief." *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1089 (9th Cir. 2011) (citation omitted). "[E]stablishing 'plausibility' requires more than establishing a mere 'possibility.'" *Id.* When the form of relief claimed is discretionary, "the alien must 'make a "plausible" showing that the facts presented would cause the Attorney General to exercise discretion in his favor.'" *Id.* (citation omitted). "[I]n light of the factors relevant to the form of relief being sought, and based on the 'unique circumstances of [the alien's] own case,' it [must be] plausible (not merely conceivable)" that relief would have been granted. *Id.* (citation omitted) (second alteration in original). Peralta-Sanchez fails to carry this burden as to both violations.

Peralta-Sanchez's claim of prejudice from failing to have the right to hire counsel falters at its first hurdle. Peralta-Sanchez points to nothing in the record to indicate that he actually would have hired an attorney had he had the right to do so. *See id.* (noting that it "assum[ed] that [the alien] could establish that he would

3

have" exercised, for prejudice-analysis purposes, the due process right he claimed to have).

Indeed, the facts in the record lead to the opposite conclusion. Peralta-Sanchez was often arrested and deported, and he would illegally reenter the United States shortly thereafter. What is more, though, are the circumstances temporally surrounding the proceedings. The apprehension that led to the proceedings occurred *three days* after he had last been removed. He was then removed again and apprehended in the United States *four days* later. After being removed again, Peralta-Sanchez illegally reentered *the very next day*. Peralta-Sanchez's contention that he would have hired a lawyer, prolonged his detention, and risked another prison sentence rather than just take the expedited removal that allowed him to try again the next day is simply implausible.

Even if we assume that Peralta-Sanchez would have hired an attorney, his three claims of prejudice based on what his attorney might have done fail.

**1.** Peralta-Sanchez first claims that an attorney could have convinced the Border Patrol agent conducting an interview aimed at established baseline facts to exercise her discretion to transform the expedited removal proceedings into a full-fledged hearing before an immigration judge, who in turn could have exercised his

discretion either to rescind the 1999 removal or to offer *nunc pro tunc* relief. Peralta-Sanchez has not shown either of these two steps to be plausible.

Peralta-Sanchez's attorney would first need to convince the Border Patrol officer interviewing Peralta-Sanchez in § 1225 removal proceedings to interpret the phrase, "the officer shall order the alien removed from the United States without further hearing or review," 8 U.S.C. § 1225(b)(1)(A)(i), to allow the officer to exercise her discretion to order the alien into a full hearing before an immigration judge. *See also* 8 C.F.R. § 235.3(b)(2)(ii). Nothing indicates that officers do that, or that their procedures authorize them to do so. Even if the officer were inclined to think she had this authority, Peralta-Sanchez has not demonstrated that she would plausibly exercise it. Peralta-Sanchez's litany of reentries, his substantial criminal record—including arrests for arson and fake identification, several felony or misdemeanor DUIs, and a felony conviction for a possession of cocaine—significantly cuts against finding an exercise of discretion plausible.

Even if an attorney could have gotten Peralta-Sanchez before an immigration judge, Peralta-Sanchez has not "ma[d]e a 'plausible' showing that the facts presented [by his circumstances] would cause the [immigration judge] to exercise discretion in his favor." *Barajas-Alvarado*, 655 F.3d at 1089 (citation omitted). Although Peralta-Sanchez argues that he was inadmissible only because

5

he entered the United States without valid entry documents, *see* 8 U.S.C. § 1182(a)(7), and that *nunc pro tunc* relief could cure this defect, Peralta-Sanchez was also inadmissible because he had been convicted of the possession of a controlled substance, cocaine.[1]  *See id.* § 1182(a)(2)(A)(i)(II); Cal. Health & Safety Code § 11350; *United States v. Garcia-Gonzalez*, 791 F.3d 1175, 1179 (9th Cir. 2015) ("[The defendant's] California state conviction for possession of cocaine rendered him inadmissible . . . ."), *cert. denied*, 136 S. Ct. 862 (2016).  The Attorney General has no discretion to waive this bar, and Peralta-Sanchez fails to explain how *nunc pro tunc* relief would do so either.  *See* 8 U.S.C. § 1182(h) (listing inapplicable exemptions).

In sum, Peralta-Sanchez has not shown that either actor would have plausibly exercised discretion on Peralta-Sanchez's behalf had Peralta-Sanchez been allowed to hire an attorney.

**2.**  Peralta-Sanchez next claims that an attorney could have helped him apply for adjustment of status.  But this is not true.  Peralta-Sanchez could not have sought adjustment of status because he was inadmissible for the reasons discussed

---

[1] Peralta-Sanchez was also inadmissible because he was "convicted of 2 or more offenses . . . for which the aggregate sentences to confinement were 5 years or more." 8 U.S.C. § 1182(a)(2)(B).  While the Attorney General has the discretion to waive this bar to admissibility, Peralta-Sanchez fails to explain why the Attorney General plausibly would do so.  *See id.* § 1182(h)(1)(A)(iii).

above. *See Garcia-Gonzalez*, 791 F.3d at 1179 ("[The defendant's] California state conviction for possession of cocaine . . . rendered his father's petition for adjustment of status irrelevant.").

**3.** Finally, Peralta-Sanchez claims that an attorney could have helped him apply for withdrawal relief. The Customs and Border Patrol has an Inspector's Field Manual that lays out six factors that should be used, non-exclusively, to guide the granting of the Attorney General's withdrawal relief. *See Barajas-Alvarado*, 655 F.3d at 1090. These factors are: (1) the seriousness of the immigration violation; (2) previous findings of inadmissibility against the alien; (3) intent on the part of the alien to violate the law; (4) the ability to easily overcome the ground of inadmissibility; (5) age or poor health of the alien; and (6) other humanitarian or public interest considerations. CUSTOMS & BORDER PATROL, INSPECTOR'S FIELD MANUAL § 17.2 (2006). Given Peralta-Sanchez's long history of flaunting our laws, both immigration and otherwise, and the dearth of equities cutting in his favor, he has not established that withdrawal relief was plausible.

As to the first factor, Peralta-Sanchez's consistent inability to abide by our immigration laws, despite several periods of imprisonment as a result of these violations, is serious and demonstrates a clear intent to violate the law. *See Raya-Vaca*, 771 F.3d at 1208 (finding that a "history of illegal reentries" made the

7

defendant's most recent violation "relatively serious"); *Barajas-Alvarado*, 655 F.3d at 1090 (finding that the fact the defendant was subject to two previous expedited removal orders rendered the most recent violation "serious").

We find as well that the second and fourth factors, related to inadmissibility, similarly weigh against Peralta-Sanchez. He had at least four findings of inadmissibility, the finality of which are not affected by any subsequent changes in the law. *See Raya-Vaca*, 771 F.3d at 1208; *United States v. Aguilera-Rios*, 769 F.3d 626, 633 n.3 (9th Cir. 2014). Moreover, the fact that, as discussed above, Peralta-Sanchez could not have sought adjustment of status, and was therefore unlikely to overcome the previous findings of inadmissibility, cuts against him. *See Garcia-Gonzalez*, 791 F.3d at 1179.

As to the fifth factor, age and poor health, Peralta-Sanchez was fifty-three years old at the time of his expedited removal in 2012. Despite now claiming that he "suffered many years of back-breaking labor in the fields," in 2012, Peralta-Sanchez was well enough to walk through the desert, hide from Border Patrol, and say that he was in good health and planning to travel to Los Angeles to work. This factor weighs against him as well.

Finally, we address factor six, humanitarian considerations. On this point, Peralta-Sanchez principally emphasizes his residence in the United States prior to

his 1999 removal and the fact that he has three U.S. citizen children. However, in *Barajas-Alvarado*, we concluded that an alien's "ties to the United States" are "not listed as considerations in the Inspector's Field Manual and therefore carry little weight." 655 F.3d at 1091. From the record, Peralta-Sanchez's family ties are also somewhat unclear. Even assuming that this weighed in Peralta-Sanchez's favor, it is insufficient.

For the same reasons, Peralta-Sanchez's claim based on a failure to be notified of the possibility of withdrawal relief—with or without the assistance of an attorney—fails for lack of prejudice.

\* \* \*

Peralta-Sanchez failed to demonstrate prejudice for either alleged due process violation during his 2012 expedited removal proceedings, foreclosing a finding that the proceedings were fundamentally unfair. Because his challenge to his 2012 expedited removal order fails, the order may serve as a predicate for his 2014 illegal reentry conviction under § 1326, which in turn supports the revocation of his supervised release.

**AFFIRMED.**

FILED

AUG 22 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*United States v. Peralta-Sanchez*, Nos. 14-50393, 14-50394
Pregerson, J., concurring:

I concur in the result only.