**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

RODOLFO GONZALEZ-FIERRO, a/k/a
Martin Marquez-Rico,

    Defendant - Appellant.

No. 18-2168

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:17-CR-02771-JCH-1)**
_____

Brian A. Pori, Assistant Federal Public Defender, Albuquerque, New Mexico, for
Defendant-Appellant Rodolfo Gonzalez-Fierro.

C. Paige Messec, Assistant United States Attorney (John C. Anderson, United States
Attorney, with her on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee
United States of America.
_____

Before **TYMKOVICH**, Chief Judge, **EBEL**, and **LUCERO**, Circuit Judges.
_____

**EBEL**, Circuit Judge.
_____

In this direct criminal appeal, Defendant Rodolfo Gonzalez-Fierro, a Mexican citizen, challenges his conviction for unlawfully re-entering the United States after a prior removal, in violation of 8 U.S.C. § 1326(a). That conviction was based in part on Gonzalez-Fierro's prior expedited removal from the United States in 2009. Due process requires that, before the United States can use a defendant's prior removal to prove a § 1326(a) charge, "there must be some meaningful review" of the prior administrative removal proceeding. United States v. Mendoza-Lopez, 481 U.S. 828, 837-38 (1987). In light of that, Congress has provided a mechanism, set forth in 8 U.S.C. § 1326(d), for a defendant charged with a § 1326(a) offense to challenge the fundamental fairness of his prior unreviewed removal. But, pursuant to 8 U.S.C. § 1225(b)(1)(D), that § 1326(d) mechanism applies only to prior formal removal orders, and not to prior expedited removal orders like Gonzalez-Fierro's. Expedited removals apply to undocumented aliens apprehended at or near the border soon after unlawfully entering the United States. Different from formal removals, expedited removals are streamlined—generally there is no hearing, no administrative appeal, and no judicial review before an expedited removal order is executed. Applying the Supreme Court's reasoning in Mendoza-Lopez, we conclude that § 1225(b)(1)(D) is unconstitutional because it deprives a defendant like Gonzalez-Fierro of due process; that is, § 1225(b)(1)(D) allows the Government to use an unreviewed expedited removal order to convict a defendant of the § 1326(a) offense of unlawfully re-entering the United States after a prior removal.

Unconstrained by § 1225(b)(1)(D), we review here Gonzalez-Fierro's 2009 expedited removal order. Doing so, we conclude that he has failed to establish that that removal was fundamentally unfair. On that basis, having jurisdiction under 28 U.S.C. § 1291, we AFFIRM Gonzalez-Fierro's § 1326(a) conviction.

## I. BACKGROUND

As we explain in greater detail below, authorities found Gonzalez-Fierro[1] unlawfully in the United States on at least two occasions. Border Patrol agents found him having just crossed the U.S.-Mexico border in 2009, which resulted in his expedited removal. In 2017, authorities again discovered him in the United States and this time charged him with the crime of unlawfully reentering the United States after a prior removal—the 2009 expedited removal. This direct criminal appeal stems from that 2017 prosecution.

### A. Gonzalez-Fierro's 2009 expedited removal

On May 1, 2009, at approximately 9:40 p.m., the Remote Video Surveillance System alerted Border Patrol agents that two people were unlawfully crossing the U.S.-Mexico border several miles west of the port of entry at Columbus, New Mexico. Responding agents discovered Gonzalez-Fierro and another person hiding in the brush. Agents arrested Gonzalez-Fierro after he acknowledged he was a

---

[1] Gonzalez-Fierro asserts that his real name is Martin Marquez-Rico. But, because the United States, in this federal prosecution, charged him as Rodolfo Gonzalez-Fierro, which is the name he gave Border Patrol agents in 2009, we refer to him by that name.

3

Mexican citizen and admitted that he had unlawfully entered the United States. Because he was apprehended within 100 miles of the border, had no immigration documents permitting him to be in the United States, could not prove that he had been in the United States for more than fourteen days, and indicated that he was not seeking asylum, immigration officials initiated expedited removal proceedings against him under 8 U.S.C. § 1225(b)(1). See 8 U.S.C. § 1225(b)(1)(A)(iii); Designating Aliens for Expedited Removal, 69 Fed. Reg. 48,877-01, 48,877-78 (Aug. 11, 2004).

In a sworn statement made during those proceedings, Gonzalez-Fierro indicated, among other things, that his date of birth was June 12, 1989, making him at that time nineteen years old (a month shy of twenty); he was a Mexican citizen, as were both of his parents; he had no immigration documents that allowed him to enter or remain in the United States legally; he had unlawfully entered the United States in order to visit his mother, who lived in Santa Fe, New Mexico, and to find work there; no one had filed "any petitions" on his behalf; and he had once before been apprehended for unlawfully entering the United States and, as a result, was sent back to Mexico. (I R. 43-44.)

Based on that information, immigration officials ordered Gonzalez-Fierro removed from the United States. Before being returned to Mexico, he pled guilty to unlawfully entering the United States, a misdemeanor, see 8 U.S.C. § 1325(a), for which he served seven days in custody.

**B. Gonzalez-Fierro is discovered in the United States in 2017**

4

As a result of a tip, Department of Homeland Security ("DHS") officers discovered Gonzalez-Fierro in Santa Fe, New Mexico, in September 2017. This led to the criminal prosecution at issue here. A grand jury indicted Gonzalez-Fierro on one count of violating 8 U.S.C. § 1326(a) by unlawfully re-entering the United States after a prior removal, his May 2009 expedited removal.[2]

"When the [G]overnment prosecutes a noncitizen for illegal reentry [under § 1326(a)], it typically must prove two things: (1) that the noncitizen left the United States with an outstanding order of removal against him and (2) that afterward, the noncitizen entered, tried to enter, or was found in the United States." United States v. Almanza-Vigil, 912 F.3d 1310, 1316 (10th Cir. 2019). Gonzalez-Fierro moved to

---

[2] Section 1326(a) provides:

Subject to subsection (b), any alien who--

**(1)** has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter

**(2)** enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,

shall be fined under Title 18, or imprisoned not more than 2 years, or both.

Section 1326(b) provides for enhanced penalties under certain circumstances, but is not applicable here.

5

dismiss the indictment against him, arguing that the Government could not use his prior 2009 expedited removal to prove the first element of the charged § 1326(a) offense because that prior expedited removal proceeding was fundamentally unfair. In making that argument, Gonzalez-Fierro invoked the § 1326(d) mechanism Congress provided to defendants charged with a § 1326(a) unlawful re-entry offense to challenge the validity of their prior removal. Section 1326(d) specifically provides that,

> [i]n a criminal proceeding under this section [§ 1326], an alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) unless the alien demonstrates that--
>
> **(1)** the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> **(2)** the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> **(3)** the entry of the order was fundamentally unfair.

As we will discuss, Gonzalez-Fierro's problem is that Congress has provided that this § 1326(d) mechanism allowing a § 1326(a) defendant to challenge his prior removal expressly does not apply to expedited removals: "In any action brought against an alien under . . . section 1326 of this title, the court shall not have jurisdiction to hear any claim attacking the validity of an order of [expedited] removal entered under subparagraph (A)(i) or (B)(iii)." 8 U.S.C. § 1225(b)(1)(D).

The district court (although without citing § 1225(b)(1)(D)) denied Gonzalez-Fierro's motion to dismiss the indictment, ruling that the court did not have

jurisdiction to review Gonzalez-Fierro's 2009 expedited removal and, alternatively, that Gonzalez-Fierro had failed to show that his 2009 expedited removal was fundamentally unfair. Gonzalez-Fierro then conditionally pled guilty to the § 1326(a) unlawful re-entry charge, preserving his right to bring this appeal challenging the denial of his motion to dismiss the indictment. See Fed. R. Crim. P. 11(a)(2).[3]

## II. DISCUSSION

**A. Due process requires that, notwithstanding 8 U.S.C. § 1225(b)(1)(D), federal courts have jurisdiction to review the fundamental fairness of an expedited removal before the United States can use it to prove a § 1326(a) charge**

In his motion to dismiss the indictment charging him with violating 8 U.S.C. § 1326(a), Gonzalez-Fierro asked the district court to review the fundamental fairness of his prior expedited removal. In doing so, he invoked the mechanism Congress provided in 8 U.S.C. § 1326(d) and, quoting Mendoza-Lopez, 481 U.S. at 837-38, he asserted that he was entitled to "some meaningful review" of his prior administrative removal proceeding before the United States could use that prior expedited removal to convict him of a crime under § 1326(a). (I R. 24.) But, as we previously mentioned, 8 U.S.C. § 1225(b)(1)(D) precludes such review: "In any action brought

_____

[3] The district court sentenced Gonzalez-Fierro to eight months in prison. Because he had already been in custody for approximately thirteen months, that sentence amounted to time served. Although the parties assert that Gonzalez-Fierro has now been removed from the United States, that does not moot this direct criminal appeal in light of the collateral consequences that are presumed to flow from the existence of the criminal conviction he challenges here. See United States v. Sandoval-Enrique, 870 F.3d 1207, 1210-11 (10th Cir. 2017).

7

against an alien under . . . section 1326 of this title, the court shall not have jurisdiction to hear any claim attacking the validity of an order of [expedited] removal entered under subparagraph (A)(i) or (B)(iii)." We conclude that § 1225(b)(1)(D) unconstitutionally deprives § 1326(a) defendants such as Gonzalez-Fierro, who have had a previous expedited removal under 8 U.S.C. § 1225(b)(1), of due process because it allows the Government to use that unreviewed expedited removal order to convict them of the § 1326(a) criminal offense.

**1. Our review is de novo**

As an initial matter, we reject the Government's contention that we should review the constitutionality of § 1225(b)(1)(D), if at all, for plain error because Gonzalez-Fierro never challenged that statute in the district court. Gonzalez-Fierro has, all along, invoked § 1326(d)'s review mechanism and cited to Mendoza-Lopez for the proposition that due process entitles him to "some meaningful review" of the fundamental fairness of his prior, previously unreviewed, expedited removal before the United States can use that prior removal to convict Gonzalez-Fierro of a crime under § 1326(a). That is the precise issue we must address here. The fact that the Government relied on 8 U.S.C. § 1252 to argue in the district court that federal courts lack jurisdiction to review the prior expedited removal, and now the parties agree that it is 8 U.S.C. § 1225(b)(1)(D) that strips federal courts of jurisdiction, does not change the fact that Gonzalez-Fierro has consistently raised and preserved the issue he argues on appeal—that, under Mendoza-Lopez, due process requires that a federal court review the fundamental fairness of Gonzalez-Fierro's prior, previously

8

unreviewed, expedited removal before the United States can use that removal to convict Gonzalez-Fierro under § 1326(a) of the crime of unlawfully re-entering the United States after a prior removal.  Our review of that issue, then, is de novo.

**2. Because 8 U.S.C. § 1225(b)(1)(D) allows the Government to use an unreviewed expedited removal to prove an element of a § 1326(a) offense, it is unconstitutional[4]**

Reiterating, 8 U.S.C. § 1326(a) makes it a crime to re-enter the United States unlawfully after a prior removal.  To convict a defendant charged under § 1326(a), the Government must prove, among other things, that the defendant was previously removed or left the United States with an outstanding order of removal against him. See Almanza-Vigil, 912 F.3d at 1316.

In 1987, § 1326 did not provide any mechanism for a defendant to challenge the validity of his prior removal order during the course of an unlawful-re-entry prosecution.  See Mendoza-Lopez, 481 U.S. at 833-37.  Nevertheless, the Supreme Court used very inclusive language in ruling that § 1326 would violate due process if "a court may impose a criminal penalty for reentry after any deportation, regardless of how violative of the rights of the alien the deportation proceeding may have been." Id. at 837 (emphasis in original).

> Our cases establish that where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be some meaningful review of the administrative proceeding. This principle means at the very least

---

[4] To the extent 8 U.S.C. § 1252(a)(2)(A), on which the Government and the district court relied, also applies here to strip jurisdiction from federal courts, in a § 1326(a) prosecution, to review the fundamental fairness of a prior expedited removal, the following analysis applies to that statute, as well.

9

that where the defects in an administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively an element of a criminal offense. The result of those proceedings may subsequently be used to convert the misdemeanor of unlawful entry [8 U.S.C. § 1325] into the felony of unlawful entry after a deportation [under § 1326(a)]. Depriving an alien of the right to have the disposition in a deportation hearing reviewed in a judicial forum requires, at a minimum, that review be made available in any subsequent proceeding in which the result of the deportation proceeding is used to establish an element of a criminal offense.

Id. at 837-39 (citations, footnotes omitted). Mendoza-Lopez, thus, held that "[w]hen the government offers a previous removal order as evidence of the first [§ 1326(a)] element"—that the noncitizen previously left the United States with an outstanding order of removal against him—"the Fifth Amendment protects the noncitizen's right to challenge that order, even years after the time for appeal has passed and the order has become final." Almanza-Vigil, 912 F.3d at 1316.

Mendoza-Lopez involved somewhat different circumstances, but its reasoning applies here with equal force. Different from Gonzalez-Fierro's expedited removal, Mendoza-Lopez involved a formal or, for lack of a better word, "regular," removal proceeding. A formal removal proceeding provides for a hearing before an immigration judge ("IJ"), an administrative appeal of the IJ's decision to the Board of Immigration Appeals ("BIA"), and limited judicial review by the relevant federal court of appeals. See 8 U.S.C. §§ 1229, 1229a, 1252; see also Thoung v. United States, 913 F.3d 999, 1001-02 (10th Cir. 2019) (noting § 1252 provides for judicial review of constitutional claims and questions of law challenging removal orders). In the Supreme Court case, Mendoza-Lopez and another immigrant were deprived of

10

judicial review of their removal orders because of purported procedural defects in their formal removal proceedings, and that resulted in the denial of their due process rights.  See Mendoza-Lopez, 481 U.S. at 839-40.

Gonzalez-Fierro's prior removal, on the other hand, was an expedited one. See 8 U.S.C. § 1225(b).  Expedited removals can be applied to only some undocumented aliens.  See id. § 1225(b)(1)(A)(iii).  When an immigration officer determines that an alien who is subject to expedited removal proceedings is inadmissible, "the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution."  Id. § 1225(b)(1)(A)(i); see also id. § 1225(b)(1)(B)(iii).  "In order to streamline th[is] removal process," United States v. Barajas-Alvarado, 655 F.3d 1077, 1081 (9th Cir. 2011), an expedited order of removal is generally not subject to an administrative appeal, 8 U.S.C. § 1225(b)(1)(C), or judicial review, id. § 1252(a)(1), (a)(2)(A), (e).  (There are limited exceptions not relevant here.  See Barajas-Alvarado, 655 F.3d at 1081-82.)

Nonetheless, Mendoza-Lopez's reasoning—that § 1326 would violate due process if a court could "impose a criminal penalty for reentry after any deportation, regardless of how violative of the rights of the alien the deportation proceeding may have been," 481 U.S. at 837—applies with equal force to expedited removals.  See Barajas-Alvarado, 655 F.3d at 1082-85 (9th Cir.).  As the Ninth Circuit explained:

> Mendoza–Lopez makes clear that the alien is entitled to judicial review of a claim that the prior proceeding was "fundamentally unfair" and thus

11

cannot be used as a predicate for a criminal case, where the prior proceeding was not previously subjected to judicial review.

Although Mendoza–Lopez addressed a situation in which the aliens had a statutory right to judicial review of a deportation order, but were effectively deprived of that right due to procedural errors in the deportation hearing, the principle established by Mendoza–Lopez is equally applicable in the expedited removal order context. By its terms, the principle that aliens must have "some meaningful review" of the proceedings resulting in their removal orders if such orders are to "play a critical role in the subsequent imposition of a criminal sanction," applies whether it was a procedural error or a statutory mandate that deprived the alien of judicial review of the predicate removal order. Moreover, Mendoza–Lopez protects a defendant's right in a criminal prosecution to challenge a predicate removal order, and nothing in Mendoza–Lopez suggests that a criminal defendant should lose such protection merely because the defendant was a non-admitted alien at the time the predicate removal order was issued.

Barajas-Alvarado, 655 F.3d at 1083-84 (9th Cir.) (citations, quotation marks, footnotes omitted); see also United States v. Villarreal Silva, 931 F.3d 330, 333 (4th Cir.) (holding that, "[u]nder the principles announced by Mendoza-Lopez, removal—of whatever kind—when made an element of a criminal offense must be subject to some meaningful review, either administratively or during the subsequent prosecution"), cert. denied, —S.Ct.— (U.S. Nov. 25, 2019).

Applying Mendoza-Lopez's reasoning, the two circuit courts to address the question directly have concluded that 8 U.S.C. § 1225(b)(1)(D) is unconstitutional because it deprives a defendant charged under § 1326(a) of the opportunity to challenge judicially the fundamental fairness of his prior expedited removal before the United States can use that prior expedited

12

removal to prove an element of the charged § 1326(a) unlawful re-entry offense. See Villarreal Silva, 931 F.3d at 334-37 (4th Cir.); Barajas-Alvarado, 655 F.3d at 1082-87 (9th Cir.).[5] So, too, have several district courts outside the Fourth and Ninth Circuits. See United States v. Barrera-Rojo, No. CR 18-531 RB, 2018 WL 2172925, at *1-2 (D. N.M. May 10, 2018) (unreported) (following Ninth Circuit's decision in Barajas-Alvarado); United States v. Sanchez-Cervantes, No. SA-12-CR-4(1)-XR, 2012 WL 1313315, at *3 (W.D. Tex. Apr. 17, 2012) (unreported) (same). "[N]o court squarely confronting the issue has held that § 1225(b)(1)(D) is constitutional." Terrazas Siles, 397 F. Supp. 3d at 819 (E.D. Va.).

The Government, nonetheless, seems to suggest, perfunctorily, that an expedited removal proceeding can never be fundamentally unfair because the undocumented alien has no rights in an expedited removal that due process would protect. In fact, an undocumented alien is given a number of procedural rights in an expedited removal.

> [T]he Supreme Court has ruled that when Congress enacts a procedure, aliens are entitled to it. See United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 544 (1950) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien is concerned."). Accordingly, though Congress could have created an expedited removal scheme based entirely on the Attorney General's discretion, here it

---

[5] The Fifth Circuit, in United States v. Lopez-Vasquez, 227 F.3d 476, 486 (5th Cir. 2000), declined to decide this question. Instead, the Fifth Circuit assumed, notwithstanding § 1225(b)(1)(D), that it had jurisdiction at least to uphold the district court's denial of a criminal defendant's motion to dismiss the indictment based on the argument that his prior expedited removal was fundamentally unfair. See Lopez-Vasquez, 227 F.3d at 486.

13

created procedures for identifying and removing aliens expeditiously, see, e.g., [8 U.S.C.] § 1225(b); 8 C.F.R. §§ 1235.3(b), 1235.4, thereby laying the groundwork for limited procedural rights for arriving aliens.

Barajas-Alvarado, 655 F.3d at 1084-85 (9th Cir.) (further citations omitted). The

Ninth Circuit further noted, for example, that

[t]he expedited removal statute, § 1225(b), provides that when an alien seeks admission to the United States after arriving at a port of entry and does not have entry documents, misrepresents the alien's identity or citizenship, or presents fraudulent identity or immigration documents, "the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution." [8 U.S.C.] § 1225(b)(1)(A)(i). The agency has promulgated regulations governing the procedures for expedited removal. See 8 C.F.R. § 1235.3(b)(2)(i). First, "the examining immigration officer shall create a record of the facts of the case and statements made by the alien . . . by means of a sworn statement using Form I–867AB, Record of Sworn Statement in Proceedings under Section 235(b)(1)." Id. The alien must sign and initial each page. Id. Second, the immigration officer "shall advise the alien of the charges against him or her on Form I–860, Notice and Order of Expedited Removal, and the alien shall be given an opportunity to respond to those charges in the sworn statement." Id. The immigration officer then serves the alien with Form I–860, and the alien must sign the back of the form to acknowledge receipt. Id. "Interpretative assistance shall be used if necessary to communicate with the alien." Id.

655 F.3d at 1081 (footnote omitted). We, therefore, reject this argument by the

Government. These are meaningful rights that could be examined, in any judicial

review of the expedited removal when it is used in a later § 1326(a) prosecution.[6]

---

[6] Even if, like Gonzalez-Fierro, the alien is not seeking asylum, therefore, DHS regulations require immigration officers to make a written record of the expedited removal proceedings, including taking the alien's sworn statement, giving the alien written information regarding the proceedings and his limited rights, advising the alien of the charge of inadmissibility against him and giving him an opportunity to respond to that charge. See 8 C.F.R. § 1235.3(b)(2).

14

In sum, we conclude that the district court erred in deciding it lacked jurisdiction to review the fundamental fairness of Gonzalez-Fierro's 2009 expedited removal proceeding. To the extent 8 U.S.C. § 1225(b)(1)(D) strips federal courts of jurisdiction to review the fundamental fairness of an expedited removal proceeding before the Government can use that expedited removal to prove a § 1326(a) criminal offense, § 1225(b)(1)(D) is unconstitutional.

**B. Gonzalez-Fierro failed to establish that his 2009 expedited removal was fundamentally unfair**

We turn, then, to the merits of Gonzalez-Fierro's challenge to his 2009 expedited removal. Under 8 U.S.C. § 1326(d), he must show that (1) he "exhausted any administrative remedies that may have been available to seek relief against the [removal] order," (2) the removal proceeding "improperly deprived the alien of the opportunity for judicial review," and (3) "the entry of the order was fundamentally unfair." Important here, because there is a presumption of regularity as to a final removal order, it is Gonzalez-Fierro's burden to meet § 1326(d)'s three requirements in order to overcome that presumption. See United States v. Adame-Orozco, 607 F.3d 647, 651 (10th Cir. 2010).[7] Gonzalez-Fierro's challenge to his prior removal

---

[7] The defendant must make § 1326(d)'s three-part showing by a preponderance of the evidence. See Richardson v. United States, 558 F.3d 216, 222 n.5 (3d Cir. 2009) (requiring defendant to prove by a preponderance of the evidence that his waiver of available administrative remedies was invalid); United States v. Silvestre-Gregorio, No. 2:18-CR-00155-JRG-CLC, 2019 WL 2353215, *10 (E.D. Tenn. June 3, 2019) (citing cases); United States v. Segura-Virgen, 390 F. Supp. 3d 681, 691, 694 (E.D. Va. 2019).

15

"presents a mixed question of law and fact that we review de novo." Almanza-Vigil, 912 F.3d at 1316.

The district court, after concluding it lacked jurisdiction to review Gonzalez-Fierro's expedited removal, alternatively addressed the merits of Gonzalez-Fierro's challenge to his 2009 expedited removal and concluded that he failed to establish that it was fundamentally unfair. We agree and affirm Gonzalez-Fierro's § 1326(a) conviction on that basis.

To establish that his prior removal was fundamentally unfair, Gonzalez-Fierro had to show both that there was a procedural error during his expedited removal proceeding and that that procedural error prejudiced him. See United States v. Sandoval, 390 F.3d 1294, 1299 (10th Cir. 2004). That is, he had to show that there is "a reasonable likelihood that, but for the complained-of error, he would have avoided removal." Almanza-Vigil, 912 F.3d at 1323.

**1. There was no procedural error in his expedited removal proceeding**

Because of the minimal procedures Congress (and DHS through its regulations) have provided aliens subject to expedited removal, it is difficult for an alien to establish that there was a procedural error in his expedited removal proceeding. Here, Gonzalez-Fierro does not challenge the district court's finding generally that "immigration authorities . . . followed the correct procedures . . . in determining that [he] was subject to expedited removal" (I R. 61). Nor does he challenge the specific procedures the Border Patrol agents employed during his expedited removal. He contends only that his expedited removal was fundamentally

16

unfair because immigration officers did not "tailor the advisement of his rights to his age." (Aplt. Br. 6.) That argument is based on Gonzalez-Fierro's assertion, in defense of the § 1326(a) prosecution, that at the time of his expedited removal in 2009, he was only a minor, not yet eighteen. More specifically, he now asserts that at the time of his expedited removal, he was only seventeen years and nine months old, instead of almost twenty, as he told immigration officers in a sworn statement given during his expedited removal proceeding. Gonzalez-Fierro's age-related argument is unpersuasive, for several reasons.

First, as the district court ruled, Gonzalez-Fierro failed to provide the district court in this § 1326 prosecution with any evidence to support his assertion that he was only seventeen years and nine months old at the time of his expedited removal proceeding. The Government, on the other hand, provided the district court with documentation indicating that, during the expedited removal proceedings, Gonzalez-Fierro stated under oath that his date of birth was June 12, 1989, which would have made him at that time almost nineteen years and eleven months old. Although it was his burden in this § 1326(a) prosecution, Gonzalez-Fierro did not provide the district court with any evidence—not even his own affidavit or his birth certificate, to which he referred in his district court pleadings—to counter the Government's documentary evidence.[8]

---

[8] Although Gonzalez-Fierro did not present any evidence to support his contention that he was only seventeen at the time of his expedited removal, and although his own affirmative sworn representations during his expedited removal proceeding declared that he was nineteen (almost twenty), the Government inexplicably in its

Even if Gonzalez-Fierro was only seventeen at the time of his expedited removal, there is no indication immigration officers realized, or should have realized, that. During his expedited removal, Gonzalez-Fierro gave immigration officials a sworn statement indicating that he was instead nineteen years and eleven months old. The relative closeness in those ages—seventeen years and nine months old or nineteen years and eleven months old—did not make his sworn statement obviously suspect.[9]

**2. Even if there was some sort of procedural error during his expedited removal, Gonzalez-Fierro failed to show that, but for that error, he would not have been removed**

---

affidavit for an arrest warrant in this subsequent § 1326(a) prosecution and again in the presentence report, asserted that Gonzalez-Fierro's date of birth was August 12, 1991, which would have made him seventeen at the time of the May 2009 expedited removal. But Gonzalez-Fierro cannot rely on these Government assertions to meet his burden to prove that he was seventeen at the time of the expedited removal proceedings. The Government's two inconsistent statements during this § 1326(a) prosecution were not part of the proof offered in support of (or in opposition to) Gonzalez-Fierro's § 1326(d) challenge to the fairness of his underlying expedited removal, nor were the Government's assertions part of the administrative record from the expedited removal proceeding.

[9] For the first time in his reply brief filed with this court, Gonzalez-Fierro argues that, if he was a minor in May 2009 (and if immigration officers knew that), he would not have been subjected to an expedited removal proceeding at all, but would have instead simply been returned to Mexico. See 8 U.S.C. § 1232(a)(2). This argument goes only to show prejudice that might have resulted if Gonzalez-Fierro had proven (which he did not) that he was only seventeen at the time of his expedited removal. We need not consider this argument, in any event, because "arguments advanced for the first time in a reply brief are waived." Eaton v. Pacheco, 931 F.3d 1009, 1025 n.15 (10th Cir. 2019).

18

Even if immigration officers somehow erred in advising a seventeen-year-old Gonzalez-Fierro of his rights during the expedited removal proceedings, he has not shown that that error prejudiced him; that is, he has not shown that, had immigration officers better advised him of his rights, he could have avoided removal, see Almanza-Vigil, 912 F.3d at 1323. Gonzalez-Fierro primarily contends that the inadequate advisement of his rights led him to waive a hearing before an IJ just so he could avoid a lengthy detention that might occur before such a hearing occurred. But he does not explain why he would have been entitled to a hearing before an IJ even if he had requested one, nor does he explain what defense to his expedited removal he could have presented at such a hearing. The opportunity for a hearing arising during an expedited removal proceeding is minimal, usually stemming from an alien's request for asylum or his assertion of a fear of persecution upon being returned to his country of origin. See 8 U.S.C. § 1225(b)(1)(A), (B); see also Jennings v. Rodriguez, 138 S. Ct. 830, 837 (2018). Gonzalez-Fierro does not contend that he could have applied for asylum or asserted an adequate fear of persecution, should he be returned to Mexico. An individual in expedited removal proceedings also might be able to obtain a hearing to show that he is lawfully in the United States. See id. § 1252(e)(2) (providing for habeas proceeding in federal court limited to challenging expedited removal on basis that person ordered removed was lawfully in the United States); see also 8 C.F.R. § 1235.3(b)(5). But Gonzalez-Fierro does not claim that is the case here, either.

19

The only thing he contends here is that, with proper advice, he would have asked for the opportunity to seek an I-130 visa as the unmarried child of a U.S. citizen through his father, a naturalized American citizen, which would then have permitted him to remain lawfully in the United States. But Gonzalez-Fierro has failed to develop this contention adequately.

As a factual matter, Gonzalez-Fierro failed to submit any evidence that his father was at that time, in May 2009, a naturalized American citizen. The only evidence in the record on this point is to the contrary—Gonzalez-Fierro's sworn statement that his father, in May 2009, was a Mexican citizen who lived in Mexico. Gonzalez-Fierro also did not present any evidence that, even if his father had become a naturalized U.S. citizen by May 2009, Gonzalez-Fierro was aware of that fact at the time of his expedited removal. In his pleadings filed with the district court, Gonzalez-Fierro asserted that "his father . . . has acknowledged paternity but is not listed on [Gonzalez-Fierro's] birth certificate" (I R. 53), suggesting that he did not have a close relationship with his father. If Gonzalez-Fierro was unaware, in 2009, that his father had become a U.S. citizen, then he would not have had any reason to try to pursue an I-130 visa through his father. Cf. Sandoval, 390 F.3d at 1299 (noting that, to establish prejudice, the noncitizen must show that, had he been advised of possible discretionary relief from removal, he would have applied for it).

Further, as a legal matter, Gonzalez-Fierro failed to show that, had his father petitioned for an I-130 visa for Gonzalez-Fierro, he would have been able to obtain one and, thus, could have avoided removal. See generally Nunez-Moron v. Holder,

20

702 F.3d 353, 354 n.1 (7th Cir. 2012) ("An I-130 petition is the <u>first step</u> for an alien seeking adjustment of status. If approved, the petition permits an illegally present alien to remain in the country and request an adjustment of status." (citations omitted; emphasis added)).[10] Nor has Gonzalez-Fierro shown that he could have avoided expedited removal, and instead could have obtained a hearing before an IJ, based on his request that he be permitted to seek an I-130 visa through his father.

All of this is to say that Gonzalez-Fierro has failed to meet his burden of showing that he was prejudiced by any inadequate advisement of his rights due to the fact he was a minor; that is, he has failed to show that, had he, as a minor, been better advised of his rights, he would have avoided removal.[11]

## III. CONCLUSION

---

[10] In <u>Dugdale v. U.S. Customs & Border Protection</u>, 88 F. Supp. 3d 1 (D.D.C. 2015), the district court upheld an expedited removal, indicating that, even if the alien arriving at the border had an approved I-130 petition, he was not entitled to "on the spot" lawful permanent resident status. <u>Id.</u> at 6. Instead, "[i]n order to become a lawful permanent resident after receiving an approved [I-130] petition, an alien must submit an application to adjust status" under 8 U.S.C. § 1255(a). <u>Id.</u> Because he had never made that request, his expedited removal was proper. <u>See</u> <u>id.</u>

[11] For the first time on appeal, Gonzalez-Fierro asserts that the district court erred in not conducting an evidentiary hearing on his motion to dismiss the indictment. But Gonzalez-Fierro never asked the district court for an evidentiary hearing. In any event, "[g]enerally speaking, an evidentiary hearing is not required unless the requesting party shows that he will produce relevant evidence." <u>Sandoval</u>, 390 F.3d at 1301 (addressing defendant's challenge under § 1326(d) to prior removal proceeding Government sought to use in § 1326(a) criminal prosecution). Here, Gonzalez-Fierro failed to submit, or even make a proffer, to either the district court or us, of the specific evidence he would have presented at an evidentiary hearing. In light of that, the district court's failure to conduct sua sponte an evidentiary hearing does not warrant relief.

21

Consistent with <u>Mendoza-Lopez</u>, we conclude that 8 U.S.C. § 1225(b)(1)(D) is unconstitutional because it allows the Government to use an expedited removal to prove a § 1326(a) criminal offense without any review of that administrative proceeding.  Providing such review here, we further conclude that Gonzalez-Fierro failed to establish that his 2009 expedited removal was fundamentally unfair.  On that basis, we AFFIRM his § 1326(a) conviction.

18-2168, *United States v. Gonzalez-Fierro*

**TYMKOVICH**, Chief Judge, concurring.

I agree with the majority's determination that Mr. Gonzalez-Fierro's 2009 expedited-removal order was not fundamentally unfair under 8 U.S.C. § 1326(d)(3). Nevertheless, I do not believe we possess jurisdiction to reach that question.

I would AFFIRM the judgment of the district court that it lacked jurisdiction to consider the merits of the prior removal order.

### A. Jurisdiction

Gonzalez-Fierro was removed from the United States pursuant to the expedited-removal process established by Congress in 1996. *See* 8 U.S.C. § 1225(b)(1)(A)(i) (2006). This process permits immigration officers to order an arriving alien removed "without further hearing or review" if the alien lacks valid entry documents or has sought to obtain entry by misrepresentation, unless the alien indicates an intent to apply for asylum or states a fear of persecution. § 1225(b)(1)(A). Congress also granted the Department of Homeland Security (DHS) discretion to extend the expedited-removal procedure to certain other classes of aliens. *See* § 1225(b)(1)(A)(iii).

In 2004, DHS announced it would consider for expedited removal any alien encountered within 100 miles of the border who had not established continuous

physical presence in the United States for the prior 14 days. *See* Designating

Aliens for Expedited Removal, 69 Fed. Reg. 48,877-01, 48,880 (Aug. 11, 2004).[1]

Aliens meeting these criteria were considered "applicants for admission" into the

United States, regardless of whether they sought to enter at a port of entry or had

already entered the country. *See* § 1225(a)(1). Thus, when Gonzalez-Fierro was

apprehended within 100 miles of the border shortly after his 2009 entry, he was

considered an applicant for admission qualified for expedited removal.

When an immigration official determines an alien will be subject to

expedited removal, he takes a sworn statement from the alien using Form I-867.

8 C.F.R. § 235.3(b)(2)(i). According to this form, the statement's purpose is to

determine the alien's admissibility: "If a decision is made to refuse your

admission into the United States, you may be immediately removed from this

country, and if so, you may be barred from reentry for a period of 5 years or

longer." R. V.I., 42. The form describes the procedure for raising a claim of

asylum or fear of persecution. The immigration officer records the alien's

answers to questions about identity, alienage, and admissibility on the form; reads

the statement to the alien; and instructs the alien to sign each page of the

---

[1] In July 2019, DHS announced it would expand the expedited-removal program to apply throughout the United States to aliens unlawfully present for less than two years. *See* Designating Aliens for Expedited Removal, 69 Fed. Reg. 35,409 (July 23, 2019). Because Gonzalez-Fierro was removed in 2009, this change does not bear on his case.

statement. 8 C.F.R. § 235.3(b)(2)(i). The officer then reads the charges of inadmissibility and gives the alien an opportunity to respond in the sworn statement. If immigration officials determine the alien should be removed, they serve the alien with Form I-860—the Notice and Order of Expedited Removal. Unless the alien claims asylum, voices fear of persecution, or claims to be a lawful permanent resident, refugee, asylee, or U.S. citizen, he is not entitled to a hearing or appeal. 8 U.S.C. § 1225(b)(1)(A), (b)(1)(C); 8 C.F.R. § 235.3(b)(2)(ii). *Importantly, § 1225 also prohibits collateral attacks on expedited-removal orders if the alien is prosecuted for illegal reentry.* 8 U.S.C. § 1225(b)(1)(D) ("In any action brought against an alien under section 1325(a) of this title or section 1326 of this title, the court shall not have jurisdiction to hear any claim attacking the validity of an order of removal entered under subparagraph (A)(i) or (B)(iii).").

Under these provisions, any claim that the district court had jurisdiction to hear Gonzalez-Fierro's collateral attack on his 2009 removal plainly contradicts the statutory scheme. He was prosecuted under § 1326 on the basis of a prior removal under § 1225(b)(1)(A)(i), and under § 1225 we lack jurisdiction to hear "any claim attacking the validity of an order of removal."

The REAL ID Act (8 U.S.C. § 1252) also forecloses jurisdiction. Passed in 2005, the Act imposes "substantial limitations on judicial review . . . of final

orders of removal." *Thoung v. United States*, 913 F.3d 999, 1001 (10th Cir.

2019). Except as provided in circumstances not relevant here, the REAL ID Act

states:

> Notwithstanding any other provision of law (statutory or nonstatutory), . . . *no court shall have jurisdiction to review* . . . any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) of this title, . . . .

8 U.S.C. § 1252(a)(2)(A)(i) (emphasis added). No court has jurisdiction to

review "the application of [§ 1225(b)(1)] to individual aliens" or "procedures and

policies adopted by the Attorney General to implement the provisions of [that

section]." § 1252(a)(2)(A)(iii)-(iv). According to § 1252(a)(5), petitions for

review filed with the courts of appeal are the "sole and exclusive means for

judicial review from an order of removal."

Either statute would suffice to deprive both the district court and this court

of jurisdiction to consider Gonzalez-Fierro's collateral attack on his § 1225

removal.

### B. Due Process Claim

Because the majority ultimately assumes the jurisdiction-stripping portions

of those statutes are unconstitutional, it holds the district court had jurisdiction to

consider the collateral attack in spite of clear statutory language to the contrary.[2]

I am not persuaded.

As an initial matter, Gonzalez-Fierro did not raise in the district court the same due process claim he now raises on appeal. In district court, Gonzalez-Fierro relied on *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987), to argue the Due Process Clause entitles him to challenge via collateral attack the fairness of the 2009 expedited-removal order. The government countered that the district court lacked jurisdiction to consider the attack because 8 U.S.C. § 1252 specifically denies courts jurisdiction to review collateral attacks against expedited-removal orders under § 1225(b)(1). Gonzalez-Fierro in turn simply reiterated his right to judicial review under *Mendoza-Lopez*. He never addressed the constitutionality of § 1225, and he never directly addressed the constitutionality of § 1252.[3]

For the first time on appeal, Gonzalez-Fierro specifically challenges the constitutionality of those jurisdiction-stripping provisions. Although *Mendoza-Lopez* involved a formal deportation proceeding for which Congress had

---

[2] The majority explicitly concludes § 1225(b)(1)(D) is unconstitutional. In order to reach the merits, it necessarily also assumes the jurisdiction-stripping provision in § 1252 is unconstitutional.

[3] The closest Gonzalez-Fierro came to arguing that the jurisdiction-stripping provisions are unconstitutional was a generic statement in the motion to dismiss that "[o]rders of removal which violate the Fifth Amendment cannot be relied upon in illegal reentry cases." R. V.I, 52.

provided a statutory right to judicial review, Gonzalez-Fierro argues it stands for the broader proposition that "meaningful review" must extend to all removals used as elements of reentry charges. The majority accepts that logic, and it is persuaded that Gonzalez-Fierro's vague due process argument preserved the issue of § 1225's constitutionality.

I disagree. The majority rightly notes that Gonzalez-Fierro made *an* argument before the district court about the constitutionality of his conviction under § 1326 using the same constitutional logic that he now employs against § 1225. But he did not specifically apply that logic to either § 1225 or the jurisdiction-stripping statute identified by the government, § 1252. His general objection is not sufficient to preserve the more specific argument Gonzalez-Fierro now makes on appeal because "a bare assertion does not preserve a claim." *See Craven v. Univ. of Colo. Hosp. Auth.*, 260 F.3d 1218, 1226 (10th Cir. 2001).

For the sake of argument, we might read his contention below as a specific argument against § 1326, the statute under which he was convicted. Read in this way, Gonzalez-Fierro's original constitutional argument against § 1326 closely resembles the one he raises on appeal against § 1225. Each relies on *Mendoza-Lopez* to suggest that a statute violates the defendant's due process rights. Still, "when a defendant pursues a particular theory or objection, but fails to raise another closely related argument, he has forfeited the argument and we review

-6-

only for plain error." *United States v. Burke*, 571 F.3d 1048, 1057 (10th Cir. 2009). So, even if we grant that Gonzalez-Fierro preserved *an* argument, it would be inappropriate to conclude that he preserved *this* argument. By recycling the logic of his original theory and marshaling it with some specificity against a different statute, Gonzalez-Fierro has attempted to disguise a novel theory as one that he has already argued. This does not satisfy our standards for preservation. *See id*.

Because Gonzalez-Fierro failed to raise his constitutional argument against those provisions with specificity before the district court, I would review—if at all—for plain error. *See United States v. Courtney*, 816 F.3d 681, 684 (10th Cir. 2016). We conduct our plain-error analysis "less rigidly when reviewing a potential constitutional error." *United States v. Dazey*, 403 F.3d 1147, 1174 (10th Cir. 2005).

But any error that occurred here is not plain:

For an error to be plain, it must be clear or obvious at the time of the appeal. An error is clear or obvious when it is contrary to well-settled law. For us to characterize a proposition of law as well-settled, we normally require precedent *directly on point* from the Supreme Court or our Circuit or a consensus in the other circuits.

*United States v. Christy*, 916 F.3d 814, 858 (10th Cir. 2019) (emphasis in original) (internal citations omitted). It is not established under well-settled law that § 1225(b)(1)(D) is unconstitutional. Gonzalez-Fierro and the majority assert

that *Mendoza-Lopez* renders the law unconstitutional. They read that case to require categorically the United States to provide judicial review for deportation proceedings in the form of collateral attack when those proceedings are used as a predicate for reentry prosecutions. Gonzalez-Fierro and the majority over-read *Mendoza-Lopez*.

The Supreme Court determined in *Mendoza-Lopez*—which long predates expedited removal—that defendants facing criminal reentry charges predicated on prior removals must have the opportunity to challenge collaterally those prior removals where any "deportation proceeding effectively eliminates the right of the alien to obtain judicial review." 481 U.S. at 839. Gonzalez-Fierro reads *Mendoza-Lopez* to require judicial review for all deportation proceedings, including those governed by § 1225. But that case dealt only with procedural flaws in deportation proceedings that deprived aliens of *existing* rights to judicial review.[4]

---

[4] The aliens in that case, Mendoza-Lopez and Landeros-Quinones, were removed from the United States in October 1984 following deportation proceedings. In December 1984, they were arrested and indicted on charges of illegal reentry under 8 U.S.C. § 1326. They argued their indictments should be dismissed because defects in their deportation proceedings made them fundamentally unfair. The district court dismissed the indictments on the theory that those defects induced Mendoza-Lopez and Landeros-Quinones to waive their right to appeal or apply for suspension of deportation. The Eighth Circuit affirmed, and the Supreme Court did, too. *See* 481 U.S. at 832.

What is notable about *Mendoza-Lopez* is that the statute provided the defendants the right to appeal or to apply for suspension of deportation. The expedited-removal scheme clearly did not provide Gonzalez-Fierro the same. And as I explained above, the statute under which he was deported explicitly denies him the right to *any* judicial review.

Because of this difference, *Mendoza-Lopez* does not clearly bear on the circumstances of Gonzalez-Fierro's case. *Mendoza-Lopez* did not address a prior proceeding in which Congress explicitly denied a statutory right to judicial review in the first place. Reasonable jurists may, then, disagree as to whether *Mendoza-Lopez* applies to the expedited-removal context. It is true that two other circuit courts have held § 1225(b)(1)(D) unconstitutional relying on *Mendoza-Lopez*. *See United States v. Villarreal Silva*, No. 18-4652, 2019 WL 3330446, at \*3–\*5 (4th Cir. July 25, 2019); *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1081–88 (9th Cir. 2011). But out-of-circuit precedent does not bind the district court; nor does it render that court's faithful application of the statute plain error.[5]

---

[5] The government also argues Gonzalez-Fierro was not entitled to *any* constitutional due process rights during the 2009 expedited removal. Because Gonzalez-Fierro was apprehended shortly after crossing the border, his status is the same for statutory purposes as that of an applicant for admission under § 1225(a)(1). And, the government says, it is not clearly established that an alien seeking initial admission (as opposed to challenging deportation, as in *Mendoza-Lopez*) may assert constitutional due process rights at all. *See Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("[A]n alien seeking initial admission to the

(continued...)

Nor can Gonzalez-Fierro satisfy the third prong of our plain-error review. "Satisfying the third prong of plain-error review—that the error affects substantial rights—usually means that the error must have affected the outcome of the district court proceedings." *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005). Because he cannot satisfy the requirements of § 1326(d), Gonzalez-Fierro cannot demonstrate the district court's decision affected his substantial rights.[6] To have achieved a different outcome, Gonzalez-Fierro needed to prove the 2009 expedited-removal proceeding was fundamentally unfair. *See* § 1326(d)(3) (requiring the alien demonstrate that "the entry of the [deportation] order was fundamentally unfair" in order to challenge its validity). He argues the prior proceeding was unfair because: (1) DHS failed to tailor the advisement of his rights to his age; (2) this failure led him to waive rights he failed to appreciate fully; and (3) such waiver eliminated the possibility that a citizen relative could have petitioned for adjustment of status on his behalf.

As the majority correctly concludes, this argument fails for numerous reasons. First, Gonzalez-Fierro did not provide the district court with anything

---

[5](...continued)
United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative.").

[6] Once the government proves the alien was deported while such an order was outstanding, the defendant-alien bears the burden to "prove each of § 1326(d)'s elements to overcome the presumed legality of the earlier deportation order." *United States v. Adame-Orozco*, 607 F.3d 647, 651 (10th Cir. 2010).

but the bare assertion that—contrary to his 2009 sworn statement—he was indeed a minor when he was removed. Even if Gonzalez-Fierro were lying in 2009, he can hardly blame DHS for relying on his sworn representation. Second, if he were a minor in 2009, Gonzalez-Fierro would not have been eligible for expedited removal at all. *See* 8 U.S.C. § 1232. So, the counterfactual argument that Gonzalez-Fierro would have been entitled to additional procedural protections in the expedited-removal proceeding makes little sense. Finally, there appears to be no mechanism by which a citizen relative can file a petition for adjustment of status in the expedited-removal context. *See* § 1225(b)(1)(A)(i) ("[T]he officer shall order the alien removed from the United States *without further hearing or review* unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution." (emphasis added)). Gonzalez-Fierro cannot demonstrate his youth caused him to waive unknowingly his right to a hearing that would establish eligibility for relief, because no such right existed.

For these reasons, Gonzalez-Fierro's constitutional challenge fails under plain-error review.

But even if I were to review de novo, I would not conclude § 1225(b)(1)(D) is unconstitutional. *Mendoza-Lopez* stands for the proposition that "a collateral challenge to the use of a deportation proceeding as an element of a criminal offense must be permitted where the deportation proceeding effectively eliminates

-11-

the right of the alien to obtain judicial review." 481 U.S. at 839. Reading this pronouncement in context, it only requires collateral challenges be available where they are necessary to preserve an *existing* right to obtain judicial review. Under then-existing law, aliens possessed a statutory right to judicial review of their deportation proceedings.[7] *Mendoza-Lopez* does not, then, recognize a free-standing right to review of a prior removal proceeding that constitutes an element in a subsequent criminal proceeding. The better reading reaffirms that the Due Process Clause ensures a defendant's *existing* statutory rights to judicial review. As the expedited-removal statute confers no right to judicial review, no collateral challenge need be permitted under *Mendoza-Lopez*.

It is elemental that the Constitution grants Congress the power to shape and limit the appellate jurisdiction of federal courts. *See* U.S. Const. Art. III, § 2, cl. 2 ("In all the other Cases before mentioned, the supreme Court shall have appellate Jurisdiction, both as to Law and Fact, with such Exceptions, and under such Regulations as the Congress shall make."). Wide latitude to withhold jurisdiction from inferior federal courts lives within the permissive language of the Exceptions Clause and the Madisonian Compromise that granted the

---

[7] In 1996, Congress replaced "deportation" and "exclusion" proceedings with a single procedure called "removal." *Cf. Vartelas v. Holder*, 566 U.S. 257, 262 (2012).

legislative branch power to create the inferior courts.  *See Patchack v. Zinke*, 138 S. Ct. 897, 906 (2018); *see also* U.S. Const. Art. III, § 1, cl. 2; Art. I, § 8, cl. 9.

The Supreme Court has identified as axiomatic the principle that "Congress may withhold from any court of its creation jurisdiction of any of the enumerated controversies.  Courts created by statute can have no jurisdiction but such as the statute confers." *Sheldon v. Sill*, 49 U.S. 441, 449 (1850).  These structural safeguards serve a separation-of-powers purpose as an important check against the accretion of power to the federal judiciary.  Without the grant of statutory power of review, Gonzalez-Fierro is not entitled to judicial review of the underlying expedited-removal order.

\* \* \*

For the foregoing reasons, I concur in the judgment and would AFFIRM the judgment of the district court.